## ELLIS *v.* STATE

No. 40005          April 2, 1956          86 So. 2d 330

*Jeff Collins, Ronald Brown,* Laurel, for appellant.

*John H. Price, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

The appellant, S. L. Ellis, was convicted in the Circuit Court of the Second Judicial District of Jones County, of assault and battery with intent to kill and murder Thomas Hinton. There is ample evidence to support the verdict of the jury in finding him guilty as charged.

Complaint is also made of three instructions given the State. The first, although it could have been drawn more clearly, submits to the jury one of the State's theories concerning appellant's guilt, and with sufficient clarity makes the conclusion of guilt dependent upon precedent findings of fact by the jury. The instructions on pages 13 and 14 of the record, concerning the use of "deadly weapons", must be read along with the other instructions. One instructs the jury for the State that "you are the sole judges whether or not the glass bottle, washtub handle, and portion of an automobile horn ring here in evidence are deadly weapons."

Defendant obtained two instructions which told the jury that the State must show beyond a reasonable doubt and to a moral certainty that the instruments in question are deadly weapons, and that the jury must believe that they are; that if the jury has a reasonable doubt as to whether the prosecuting witness was struck by any weapons, but was struck only by the defendant's fists, then it was the jury's duty to find the defendant not guilty; that the intent to kill and murder is an essential ingredient of the offense charged, and unless the jury believed that defendant assaulted Hinton with means or force likely to produce death, with intent to kill and murder him, it would find defendant not guilty.

■■ ■ The trial court refused appellant the following requested instruction: "The court instructs the jury that you cannot find the defendant guilty of the crime charged in the indictment unless you would find him guilty of murder if he had killed Thomas Neal Hinton, and was on trial for murder."

This instruction was granted in Dillon v. State, 18 So. 2d 457 (Miss. 1944), and is quoted in 1 Alexander, Miss. Jury Instructions (1953), Section 567. It attempts to define the necessary intent to kill and murder by reference to that necessary where a defendant is being tried for murder. However, assuming that the trial court should have granted this instruction, both the State and appellant obtained numerous instructions stating and attempting to define what constitutes a felonious intent to kill and murder. So there was no reversible error in the refusal of the instruction.

While appellant was in jail after being charged with the assault and battery upon Hinton, he wrote a letter to his brother in Newark, New Jersey. Its substance is that "These white people (are) kicking niggers" around. "But you know I don't stand for that type of carrying on. I have to make a few changes. By the way I'm in the can Doc and I. We done one of these jokes

up pretty bad. They tried to charge us with a couple of phony charges. As soon as we beat this rap, will be on up the way.'' The balance of the letter told his brother that when he got out of jail, he was going to buy some tires for his car and drive up to see him. This letter was handed by appellant to his mother who came to visit him in jail. He said that he gave her the money to put a stamp upon it. He admitted that he had written the letter. His mother did not testify.

Clarence Goodson, deputy sheriff and jailer of Jones County, had charge of the prisoners. He testified that he observed that appellant's mother had this letter; that he asked her for it, and she voluntarily handed it to him; that without obtaining her or the appellant's consent he opened it and transmitted it to the prosecuting attorneys. Goodson said that as jailer of Jones County, he censors the mail that goes in and out of the jail from and to prisoners, for his own protection and the protection of prisoners, and in order to be able to properly detain them; and that there was no stamp on the letter which appellant's mother handed him.

██ ██ Appellant's counsel at the trial objected to introduction of this letter in evidence, on the grounds that it was obtained by an unlawful search and seizure, it was irrelevant, immaterial and of no probative value on appellant's guilt, and it was highly prejudicial and inflamatory because it injected into the trial the question of race prejudice. The trial court overruled the objections, and held that the letter was voluntarily written by defendant, that the officers had a right to intercept mail coming in and out of prison to and from prisoners; and that the letter came into possession of the prison officials ''under an established practice of reasonable necessity to promote the safeguarding of the jail.'' Appellant then made a motion for a mistrial, which was overruled.

There was no error in the admission into evidence of this letter. Stroud v. U. S., 251 U. S. 15, 40 Sup. Ct. 50, 64 L. Ed. 103 (1919), involved this identical question. Stroud was convicted of murder, and the conviction was affirmed. The Court said: ''Certain letters were offered in evidence at the trial containing expressions tending to establish the guilt of the accused. These letters were written by him after the homicide and while he was an inmate of the penitentiary at Leavenworth. They were voluntarily written, and under the practice and discipline of the prison were turned over ultimately to the warden, who furnished them to the district attorney. It appears that at the former trial, as well as the one which resulted in the conviction now under consideration, application was made for a return of these letters upon the ground that their seizure and use brought them within principles laid down in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and kindred cases. But we are unable to discover any application of the principles laid down in those cases to the facts now before us. In this instance the letters were voluntarily written, no threat or coercion was used to obtain them, nor were they seized without process. They came into the possession of the officials of the penitentiary under established practice, reasonably designed to promote the discipline of the institution. Under such circumstances there was neither testimony required of the accused, nor unreasonable search and seizure, in violation of his constitutional rights.''

In re Bull, 123 Fed. Supp. 389, 391 (U. S. D. C. Nev. 1954), followed the Stroud case. The Court said: ''The opening and inspection of the letter at the Las Vegas County Jail was not an illegal search and seizure in violation of the 4th Amendment. Prison authorities, of necessity, have the right to censor prisoners' mail. The 4th Amendment does not sanction an unrestricted

channel of communication behind prison walls. Stroud v. United States, 1919, 251 U. S. 15, 40 S. Ct. 50, 64 L. Ed. 103; Adams v. Ellis, 5 Cir. 1952, 197 F. 2d 483. Neither as a privileged document, nor because of unlawful search or seizure, may the letter be suppressed. Consequently the motion to suppress is denied." See also Nelson v. U. S., 208 F. 2d 505, 508, Footnote 6 (U. S. C.A., D. C. 1953); Marron v. U. S., 8 F. 2d 251, 256 (C. C. A. 9th, 1925); Olmstead v. U. S., 277 U. S. 438, 48 Sup. Ct. 564, 572, 72 L. Ed. 956 (1928); Adams v. Ellis, 197 F. 2d 483 (U. S. C. A. 5th 1952).

Adams v. Ellis, 197 F. 2d 483 (U.S.C.A. 5th 1952) is a decision on a related issue. Plaintiff filed a petition in the district court against the general Manager of the Texas Prison System and others working under him for damages for alleged violations by the prison authorities of his civil rights under the federal statutes. He charged that while he was a prisoner in the Texas prisons, under a conviction for crime, he had been deprived of his civil rights by the actions of the prison authorities in examining, censoring and confiscating mail from and to him. Affirming the dismissal of his petition, the court held that prison authorities have the right of censorship of a prisoner's mail. Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights. A prisoner has no right of unrestricted freedom in the receipt and transmission of mail.

These principles are directly related to the instant facts and to the holding in Stroud v. U. S. Appellant voluntarily wrote the letter, and under the rules of the prison in which he was incarcerated the letter was handed to the jailer He transmitted it to the district attorney. The letter came into the possession of the officials under an established practice reasonably designed to promote the discipline of the institution. For these reasons, there was no unreasonable search and seizure or

any violation of appellant's privilege against self-incrimination.

■■ The letter was relevant and of probative value on the issue of appellant's guilt, although it unfortunately stated facts which might indicate that appellant thought he was a victim of racial prejudice. That matter was not injected into the case by the State, but by the appellant's own voluntary action in writing the letter. Moreover, the verdict does not indicate in any respect that the jury was prejudiced against him. ■■ Appellant received a fair trial, and the great weight of the evidence supports his conviction.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.