Lawrence W. SMITH et al., Plaintiffs-Appellees and Cross-Appellants,

and

Philip E. JAROS et al., Plaintiffs-Appellees and Cross-Appellants,

v.

Wayne SHIMP et al., Defendants-Appellants and Cross-Appellees.

Nos. 77–1175, 77–1176.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1977.

Decided Sept. 16, 1977.

David Goldberger, Mark K. Schoenfield, Chicago, Ill., for Smith.

Malcolm F. Smith, Charles E. Ruth, Du-Page County, Asst. State's Attys., Wheaton, Ill., for Shimp.

Before CASTLE, Senior Circuit Judge, WOOD, Circuit Judge, and MARKEY, Chief Judge of U. S. Court of Customs and Patent Appeals.*

CASTLE, Senior Circuit Judge.

Plaintiffs, who are pretrial detainees at the DuPage County, Illinois, Jail, brought the instant action under 42 U.S.C. § 1983 alleging that the handling of mail by jail officials violated their civil rights. The district court entered an order on the basis of a stipulation of facts prescribing procedures to be followed in the handling of detainees' mail. Both parties have appealed.

**I.**

The parties stipulated that the following procedures are followed at the jail. All incoming mail is opened, examined for contraband and distributed to the detainees on the day the mail is received at the jail. Jail officials spot-check the contents of all incoming mail except mail from "privileged persons," who include generally government officials, attorneys and legal aid organizations. Mail from "privileged persons" is opened only to verify the addressee and the addressor and to ascertain that nothing other than legal or official matter is enclosed. Jail personnel also spot-check the contents of all outgoing mail except "privileged correspondence," which may be sealed by the detainee prior to submission for mailing. "Privileged correspondence" includes mail to government officials, attorneys, legal aid organizations, and members of the news media. If any letter inspected or read by jail personnel discloses evidence of contraband, attempts to escape, information about criminal activities or any unlawful material, the personnel refuse to deliver or mail the letter. Such letters are returned to the detainee at the time he is released from jail.

The district court's order, entered December 6, 1976, contained the following provisions:

(1) All pretrial detainees shall be presented with a copy of the institution's correspondence regulations. Copies shall be available in both English and Spanish.

(2) Incoming mail may be physically inspected for contraband in the presence of the detainee.

(3) Nonprivileged incoming mail may be read in the presence of the detainee. If the content involves matters that affect jail security or the presence of the detainee at trial, such mail may be censored, reproduced or withheld from delivery.

---

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

(4) When a pretrial detainee's incoming mail is censored, reproduced or withheld from delivery, the letter and a written and signed notice stating reasons for disapproval will be sent to the sender. A copy of that notice shall be given to the detainee.

(5) When a detainee's outgoing mail is read, censored, reproduced or withheld from delivery, the letter and a written and signed notice stating reasons for disapproval will be given to the detainee.

(6) Pretrial detainees shall be given a reasonable opportunity to protest a rejection of outgoing mail. Such complaints shall be referred to a prison official in a position of higher authority than the individual who originally rejected the mail.

The defendant jail officials appeal from those parts of the order which require the presence of the pretrial detainee when his nonprivileged incoming mail is read or inspected for contraband. The plaintiff detainees cross-appeal from those parts of the order which allow the reading of any nonprivileged mail and the inspection of outgoing nonprivileged mail for contraband.

## II.

The disposition of this case depends primarily on the question of whether the reading of nonprivileged mail by jail officials on a spot-check basis is unconstitutional. As we shall explain below, our conclusion that it is not renders insubstantial the other two questions raised by the parties.

 Plaintiffs assert that their interest in corresponding privately with relatives and friends is constitutionally protected, particularly claiming protection for private communication with their spouses. Plaintiffs rely on the constitutional rights of free speech and privacy. For the purpose of this appeal, we need not determine the precise relationship of the asserted interest to these

rights, for we may assume that the interest is constitutionally protected. *See also Wolff v. McDonnell,* 418 U.S. 539, 576–77, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Neither the right of free speech nor the right of privacy is absolute, but the interests they protect must be considered against important governmental interests in regulation. *Cohen v. California,* 403 U.S. 15, 19, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Roe v. Wade,* 410 U.S. 113, 154, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). We conclude that the interest of the state in monitoring the nonprivileged correspondence of the pretrial detainees justifies the minor burden that it places on their freedom to communicate with friends and relatives.

We start by emphasizing the limited nature of the governmental interference challenged in this appeal. First, the practice we address does not constitute prohibition *per se* of any communication by the pretrial detainees. While the district court's order contemplates censorship of some nonprivileged detainee mail, we are not presented with a case of actual censorship and therefore do not have a concrete factual setting in which the constitutional limits of that practice may be addressed. The court's order provides that a detainee be given notice if any of his mail is censored, thereby allowing him to challenge such action when it occurs. Second, this case does not involve surreptitious or otherwise unexpected intrusion upon privacy by the government. The district court's order substantially requires jail officials to inform detainees that their nonprivileged mail may be read. The interference involved here is a limitation on the detainee's freedom to exchange confidences with personal correspondents that arises from the natural reluctance to share private matters with jail officials.[1]

 In *Duran v. Elrod,* 542 F.2d 998, 999 (7th Cir. 1976), we declared that the "sole permissible interest of the state" in restricting the freedoms of pretrial detain-

---

1. The Fifth Circuit found constitutional significance in this burden as it fell on letters between jail inmates and government agencies and the press. *Taylor v. Sterrett,* 532 F.2d 462,

468–82 (5th Cir. 1976). Such correspondence is protected from scrutiny at the DuPage County Jail by its treatment as "privileged" correspondence.

ees "is to ensure their presence at trial." Maintaining jail security directly serves that interest. *Id.* at 1000. The defendants assert that they spot-check the contents of nonprivileged mail to deter use of the mail for plans of escape. If unmonitored use of the mail presents a substantial threat to jail security, the burden imposed on the detainees' freedom to communicate private matters is justified. The asserted purpose of reading the detainees' letters is unrelated to any design to pry into their private affairs or to discourage communication of private matters. The reluctance of the detainees and of their correspondents to share personal matters with jail officials does not merit any sacrifice in the security of the institution. If conflict between the state's interest in jail security and the civil liberties of the detainees cannot be avoided or limited by reasonable means, the latter must yield. *See id.; Taylor v. Sterrett,* 532 F.2d 462, 470 n.11, 478–82 (5th Cir. 1976); *Crowe v. Leeke,* 550 F.2d 184, 188 (4th Cir. 1977).

■ Plaintiffs, however, point out that there is nothing in the present record to suggest that the mail is or would be used to facilitate plans for escape. We do not believe such proof is necessary. We may take judicial notice of the fact that an opportunity for secret and lengthy communication between a detainee and his friends or relatives would substantially enlarge his opportunity for successful escape. We have no doubt that over the course of time some persons would take advantage of that opportunity. *Cf. Wolff v. McDonnell, supra,* 418 U.S. at 577, 94 S.Ct. 2963 (proof not required to establish possibility that letters, including those from apparent attorneys, might contain contraband). Accordingly, we conclude that unmonitored use of nonprivileged detainees' mail does pose a genuine threat to jail security.[2]

■ We may assume that the defendants' practice would be unconstitutional if the interest in jail security could be protected by less burdensome means. See *Procunier v. Martinez,* 416 U.S. 396, 413–14, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Taylor v. Sterrett, supra* at 479–92. The plaintiffs have not suggested any less restrictive way in which the interest could be protected, and we do not perceive one. There is no apparent way that jail officials could anticipate which detainees might use the mail in an effort to escape. Thus, the burden of surveillance must be carried by all. *Cf. Wolff v. McDonnell, supra,* 418 U.S. at 577, 94 S.Ct. 2963 (flexible test to determine when jail officials may open letters to search for contraband is "unworkable"). Correspondence with spouses may not be excluded from surveillance without jeopardizing the effectiveness of the check. A spouse may just as readily cooperate in a plan for escape as other relatives or friends of the detainee. Incoming and outgoing mail appear equally subject to use for the development of escape plans.[3] If surveillance of one or the other were prohibited, the mail check could be frustrated easily by the use of coded messages in letters subject to the check. We therefore conclude that the burden imposed is no greater than necessary to protect the interest in jail security and that the plaintiffs' constitutional rights are not violated by the challenged practice.

### III.

■ Our conclusion that jail officials may read outgoing nonprivileged mail to check for escape plans makes insubstantial the question of whether such mail may be checked for contraband. While it may be

---

**2.** Plaintiffs argue that this or any asserted justification for surveillance of their mail is specious, because jail officials have no apparent way of monitoring telephone calls or conversations on visiting days. This argument fails because the record does not disclose to what extent, if any, the detainees have privacy in such conversations. We may not presume that such privacy exists, for in jails "official surveillance has traditionally been the order of the

day." *Lanza v. New York,* 370 U.S. 139, 143, 82 S.Ct. 1218, 1221, 8 L.Ed.2d 384 (1962).

**3.** *Nolan v. Fitzpatrick,* 451 F.2d 545 (1st Cir. 1971), does not hold, as plaintiffs assert, that the outgoing mail of pretrial detainees may not be opened, read or inspected in the absence of a search warrant. The plaintiff prisoners in that case did not challenge the prison officials' practice of reading outgoing mail. *Id.* at 549.

true that contraband leaving the jail poses no substantial threat to its security, the justification jail officials have to read the mail eliminates any reasonable expectation of privacy the detainees might have in the contents of envelopes submitted for non-privileged mailing. *Cf. United States v. Hitchcock,* 467 F.2d 1107 (9th Cir. 1972), *cert. denied,* 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973) (prisoner has no reasonable expectation of privacy in his jail cell). What the pretrial detainee places in such envelopes he knowingly exposes to possible inspection, by jail officials and consequently yields to reasonable search and seizure. *See Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1957).

### IV.

The defendants challenge the parts of the district court's order requiring the presence of the detainee when his nonprivileged incoming mail is inspected. They concede that the detainee's presence is required when his incoming privileged mail is opened to ensure that it is merely inspected for contraband and not read. See *Wolff v. McDonnell, supra,* 418 U.S. at 577, 94 S.Ct. 2963; *Bach v. Illinois,* 504 F.2d 1100 (7th Cir.), *cert. denied,* 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974). However, they point out that this justification does not apply to nonprivileged mail, because it may be read as well as inspected for contraband. Moreover, they assert that the district court's requirement that the detainee be given notice if any incoming mail is censored, reproduced or withheld from delivery fully protects the detainee's rights. Thus, they claim that the presence requirement merely adds an administrative burden without substantially contributing to the detainee's rights.

█ Plaintiff's counsel conceded at oral argument that, if jail officials could read nonprivileged mail, the district court's notice requirement was sufficient to protect the detainee's rights. Because no apparent constitutional justification exists for imposing the additional burden on the jail officials, we reverse the district court's judg-

ment insofar as it requires the detainee's presence during the inspection of his non-privileged incoming mail and remand for an appropriate modification of the court's order.

### V.

The judgment of the district court is affirmed with respect to the questions raised by the cross-appeal and reversed and remanded with respect to the question raised by the appeal.