## LARRY HUGH THOMAS *v.* STATE OF MARYLAND

[No. 27, September Term, 1978.]

*Decided July 20, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

While in the Howard County Detention Center awaiting trial for rape and related charges, the defendant handed a sealed envelope containing a letter to a correctional officer for delivery to a fellow inmate at the same institution. The envelope was turned over to other officials of the detention center who opened it and read the letter. The letter contained an inculpatory statement, was turned over by the institution officials to the State's Attorney, and was introduced at the defendant's trial after denial of his motion to suppress. The defendant was subsequently convicted in the Circuit Court for Howard County of rape and battery, was sentenced to life imprisonment for the rape and a consecutive term of ten years for the battery, and the judgments were affirmed by the Court of Special Appeals. *Thomas v. State,* 39 Md. App. 217, 384 A. 2d 772 (1978). We granted certiorari to consider the single issue presented by the defendant, namely whether under the circumstances the seizure, reading and introduction into evidence of the letter involved a violation of his Fourth Amendment rights. We hold that there was no violation of the Fourth Amendment and affirm.

At the hearing on the defendant's motion to suppress, a regulation of the Howard County Detention Center relating to "Inmate Mail" was introduced. It provided:

"Title: Inmate Mail

Purpose: To provide Policy and Procedure for Incoming and Outgoing Mail

1. Policy and Procedure:

a. All outgoing inmate mail may be sealed.

b. All incoming mail will be opened for inspection before delivery to the inmate.

c. All outgoing correspondence must bear the name and address of the sender and the receiver. Incoming mail will be inspected for contraband and subject to additional review to determine appropriateness. Such mail will be returned to the sender, if in the opinion of the institution, such mail falls into one of the following categories:

   (1) Inflammatory or advocates escape, violence, disorder, or assault.

   (2) Directly or indirectly threatens the security, safety, or order of the institution or its personnel.

   (3) Contains coded or otherwise undecipherable language that prevents the adequate review of the material.

d. Packages may be received only when prior written approval has been given; any package received without such approval shall be refused and returned to the sender."

The warden of the detention center testified at the hearing that the above-quoted regulation did not cover correspondence from one inmate to another, and that the inmates were not apprised that a letter in a sealed envelope from one to another would be read by institution officials. Although nothing informed inmates that such correspondence would be read, the warden further testified that the correctional officers were instructed to inspect packages or parcels from one inmate to another, including letters in sealed envelopes. This inspection, according to the warden, was prompted by concern for the security of the institution.

It was also established at the suppression hearing that the envelope was in fact sealed when the defendant gave it to the correctional officer for delivery to another inmate, and that

the defendant gave no one permission to read the letter. There was no suggestion in the testimony that the correctional officer, when he accepted the letter from the defendant, said anything indicating that the envelope would be opened and the letter read.

Both the State and the defendant have consistently taken the position that the regulation of the Howard County Detention Center concerning "Inmate Mail" was not applicable to correspondence from one inmate to another inmate in the institution; instead, it applied only to *mail* going *out of the institution* and coming *into the institution.* As previously mentioned, this was the view of the detention center's warden. It was also the view of the circuit court. Nevertheless, the Court of Special Appeals was of the opinion that the regulation did apply to correspondence between inmates, that such letters would constitute " 'incoming' mail" as to the inmate who was the addressee, and that, "[b]y virtue of the published regulations," the defendant "knew, or should have known ... that the letter was subject to being opened and read by the correctional staff." 39 Md. App. at 229. From this, the Court of Special Appeals concluded that the defendant had no right to assume that there would be any privacy associated with the letter. *Ibid.* Because the defendant had no reasonable expectation of privacy, the Court of Special Appeals held that there was no violation of the Fourth Amendment. The court relied on *Stroud v. United States,* 251 U. S. 15, 40 S. Ct. 50, 64 L. Ed. 103 (1919), which it viewed as "virtually indistinguishable from the case at bar." *Id.* at 224, 229.

Preliminarily, we agree with the parties and the circuit court, and disagree with the Court of Special Appeals, regarding the scope of the detention center's regulation. By use of the terms "mail," "incoming" and "outgoing," it would seem that the regulation was designed to deal with correspondence sent from inmates, via the United States Postal Service, to persons outside of the institution, and correspondence sent from persons outside of the institution, via the Postal Service, to inmates. This is confirmed by references in the regulation to the addresses of the parties,

and the provision for the return to the sender of inappropriate "incoming mail." It is further confirmed by the distinction drawn between the two types of mail, with outgoing mail being allowed to be sealed, whereas all incoming mail is subject to inspection before delivery to the inmate. Moreover, this is the view of the warden, who promulgated the regulation. Consequently, we do not believe that the defendant knew or should have known, based on the regulation, that the envelope given to a guard for hand delivery to another inmate was subject to being opened and the contents read. Rather, the case must be treated as one where there was no regulation or practice made known to the inmates regarding correspondence between inmates in the institution.

In certain other respects, it would be well to delineate the nature of the case before us. Since this case does not involve mail between inmates and non-inmates outside of the institution, where the rights of those on the outside are implicated, opinions dealing with the examination, reading or censorship of such mail are not directly in point. *See, e.g., Procunier v. Martinez,* 416 U. S. 396, 94 S. Ct. 1800, 40 L.Ed.2d 224 (1974); *Wolfish v. Levi,* 573 F. 2d 118, 130 (2d Cir. 1978), *rev'd on other grounds, Bell v. Wolfish,* 441 U. S. 520, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979); *Smith v. Shimp,* 562 F. 2d 423 (7th Cir. 1977). Similarly, the instant proceeding does not involve correspondence between an inmate on one hand and courts, public officials or attorneys on the other, where the inmate's right of access to the courts and government, as well as his right to the assistance of counsel, may be implicated. *See, e.g., Crowe v. Leeke,* 550 F. 2d 184, 188-189 (4th Cir. 1977); *Taylor v. Sterrett,* 532 F. 2d 462 (5th Cir. 1976). Finally, there is no claim in this case based upon the First Amendment's free speech clause or upon any other constitutional provision except the Fourth Amendment. *See Wolfish v. Levi, supra; Smith v. Shimp, supra; Taylor v. Sterrett, supra.* The defendant limited the question presented in the petition for a writ of certiorari to whether his Fourth Amendment rights were violated. *See Dempsey v. State,* 277 Md. 134, 355 A. 2d 455 (1976); *Walston v. Sun Cab Co.,* 267 Md. 559, 298 A. 2d 391 (1973); Maryland Rule 813 a.

It is, of course, well settled that, as a general matter, lawful detention or imprisonment "necessarily makes unavailable many rights and privileges of the ordinary citizen," but "though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections." *Wolff v. McDonnell,* 418 U. S. 539, 555, 94 S. Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), and cases there cited. And *see Bell v. Wolfish, supra,* 441 U. S. at 533-548, 99 S. Ct. at 1871-1879; *Jones v. North Carolina Prisoners' Union,* 433 U. S. 119, 125, 97 S. Ct. 2532, 2538, 53 L.Ed.2d 629 (1977).

With regard to the Fourth Amendment specifically, however, it is not at all clear whether the protections of that amendment extend to pre-trial detainees or convicted prisoners in a detention center or correctional institution. As the Supreme Court very recently reiterated, "the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. State of Maryland,* U. S. 99 S. Ct. 2577, 61 L.Ed.2d 220 (1979). *See Katz v. United States,* 389 U. S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967). Because of the nature of a jail or prison, where "official surveillance has traditionally been the order of the day," *Lanza v. New York,* 370 U. S. 139, 143, 82 S. Ct. 1218, 8 L.Ed.2d 384 (1962), it has been observed that an argument can be made "that a person confined in a detention facility has no reasonable expectation of privacy with respect to his room or cell and that therefore the Fourth Amendment provides no protection for such a person." *Bell v. Wolfish, supra,* 441 U. S. at 556-557, 99 S. Ct. at 1883. *See also People v. Jones,* 19 Cal.App.3d 437, 449, 96 Cal.Rptr. 795, 802 (1971) ("Except for the attorney's room, a prisoner has no right of privacy in a jail."); *United States v. Hitchcock,* 467 F. 2d 1107 (9th Cir. 1972), *cert. denied,* 410 U. S. 916, 93 S. Ct. 973, 35 L.Ed.2d 279 (1973). On the other hand, some courts have taken the position that persons incarcerated in jails and prisons retain a measure of Fourth Amendment protection. *United States v. Stumes,* 549 F. 2d

831, 832 (8th Cir. 1977); *Bonner v. Coughlin,* 517 F. 2d 1311, 1316-1317 (7th Cir. 1975); *United States v. Savage,* 482 F. 2d 1371 (9th Cir. 1973), *cert. denied,* 415 U. S. 932, 94 S. Ct. 1446, 39 L.Ed.2d 491 (1974). The Supreme Court has not decided the question. In its most recent decision dealing with inmates' rights, it has "[a]ssum[ed], *arguendo,* that a pretrial detainee retains . . . a diminished expectation of privacy after commitment to a custodial facility." *Bell v. Wolfish, supra,* 441 U. S. at 557, 99 S. Ct. at 1883. For purposes of our decision in the instant case, we shall similarly assume, without deciding, that a pretrial detainee like the defendant retains some reasonable expectation of privacy and thus a degree of Fourth Amendment protection.

However, merely because inmates may retain a degree of Fourth Amendment protection with respect to some matters, it does not necessarily follow that the defendant in the present case had a reasonable expectation of privacy with respect to the contents of the sealed envelope handed to the correctional officer. In taking the position that he did not, the Court of Special Appeals, as well as the State in its argument to this Court, relied upon *Stroud v. United States, supra,* 251 U. S. 15. Nevertheless, *Stroud* is distinguishable. In that case, an inmate gave letters to a guard for delivery to someone else; they contained incriminating statements; they were turned over to the District Attorney by the prison officials; and they were ultimately introduced into evidence at the inmate's trial. But the similarity to the present case ends here. In holding that there was no unreasonable search and seizure, the Supreme Court pointed out that the letters were not "seized without process. They came into the possession of the officials of the penitentiary under established practice, reasonably designed to promote the discipline of the institution." 251 U. S. at 21. The reference to the "established practice" is explained by the Record in *Stroud,* pp. 69-72, which shows that the reading of the letters (which were not in sealed envelopes and were not even folded) was done pursuant to the rules and regulations of the prison which

were made known to the inmates.[1] A recent opinion emphasizing the limits of the *Stroud* decision is that of Mr. Justice Stevens, then a circuit judge, for the court in *Bonner v. Coughlin, supra,* 517 F. 2d at 1316.

In several cases upholding the reading of inmate correspondence, the courts have relied on the fact that the inmates were informed, by regulation or otherwise, that their correspondence would be read. *Smith v. Shimp, supra,* 562 F. 2d at 425; *United States v. Dawson,* 516 F. 2d 796, 805-806 (9th Cir. 1975), *cert. denied,* 423 U. S. 855, 96 S. Ct. 104, 46 L.Ed.2d 80 (1975); *United States v. Wilson,* 447 F. 2d 1, 7 (9th Cir. 1971), *cert. denied sub nom. Polk v. United States,* 404 U. S. 1053, 92 S. Ct. 723, 30 L.Ed.2d 742 (1972); *Denson v. United States,* 424 F. 2d 329, 330-331 (10th Cir. 1970), *cert. denied,* 400 U. S. 844, 91 S. Ct. 88, 27 L.Ed.2d 80 (1970); *State v. Johnson,* 476 S.W.2d 516, 518 (Mo. 1972); 456 S.W.2d 1 (Mo. 1970). On the other hand, in *United States v. Savage, supra,* 482 F. 2d at 1372-1373, involving the reading, copying and introduction into evidence of a letter written by an inmate to another inmate confined in a different institution, where there was apparently no regulation or practice made known to the inmates that such correspondence would be read, the court indicated that there was a reasonable expectation of privacy with respect to the letter. The court went on in *Savage* to hold that, because there was no "showing of some justifiable purpose of imprisonment or prison security the interception and photocopying of the letter was violative of the Fourth Amendment and the letter should have been excluded as evidence." 482 F. 2d at 1373.

In the instant case, both the defendant and the State have framed the Fourth Amendment question solely in terms of the defendant's reasonable expectation of privacy with regard to correspondence. Both sides seemed to have assumed that if the defendant did have a reasonable expectation of privacy, his Fourth Amendment rights would

---

1. Other cases apparently involving similar situations to that in *Stroud,* where the courts relied on *Stroud,* are Hayes v. United States, 367 F. 2d 216, 222 (10th Cir. 1966); People v. Dinkins, 242 C.A.2d 892, 52 Cal. Rptr. 134 (1966); Baker v. State, 202 So.2d 563, 567 (Fla. 1967); Ellis v. State, 227 Miss. 440, 444-446, 86 So.2d 330, 331-332 (1956).

have been violated. This assumption may be due to the absence of a showing that the institution officials had any basis (e.g., "probable cause" or "reasonable suspicion") for believing that this particular envelope contained contraband, escape plans, or anything else detrimental to the security or orderly administration of the detention center. Thus, the dispute between the parties has been limited to whether or not the defendant reasonably could have had an expectation of privacy. If we also viewed this as the determinative inquiry, the case would be a close one.[2] However, in our opinion, whether or not the defendant's expectation of privacy regarding the correspondence may have been reasonable is not the dispositive issue. If we assume that he had some justifiable expectation of privacy, this only means that the Fourth Amendment is implicated in the particular search. It does not mean that the search is an "unreasonable" one in violation of that constitutional provision. Under the Fourth Amendment analysis applicable to pre-trial detainees set forth recently in *Bell v. Wolfish, supra,* 441 U. S. at 555-560, 99 S. Ct. at 1882-1885, as we understand that opinion, there was no Fourth Amendment violation in the present case.

*Bell v. Wolfish* concerned, *inter alia,* two institutional practices which, according to several pre-trial detainees, were allegedly in violation of their Fourth Amendment rights. One practice involved unannounced "shakedowns" or searches of inmate living areas, during which inmates were cleared of the areas and not permitted to watch the searches. The other practice required inmates "to expose their body cavities for

---

2. Supporting the defendant's position are the following circumstances: the regulation informing the defendant that certain correspondence would be inspected did not encompass this particular type of letter; there was no regulation or practice made known to the inmates telling them that correspondence from one inmate to another would be read; the correctional officer accepted the sealed envelope for delivery without, apparently, saying anything suggesting that it would be inspected; and the defendant gave no one permission to inspect the envelope. In light of some of the above-cited cases, a strong argument could be made that the defendant's expectation of privacy was justifiable or reasonable.

On the other hand, it might be persuasively argued that, considering the clear need for maintaining order and security in the institution, it should be obvious that sealed envelopes might contain contraband, escape plans, other disruptive plans, etc., and that, therefore, no inmate could reasonably assume that such an envelope sent to a fellow inmate would not be inspected, despite the absence of a regulation or practice made known to the inmates.

visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution." 441 U. S. at 558, 99 S. Ct. at 1884. In upholding both practices, the Supreme Court assumed arguendo that the Fourth Amendment was implicated because the inmates had some expectation of privacy, although of a diminished scope. Nevertheless, being of the opinion that both practices were appropriate security measures, the Court held that they were not "unreasonable" within the meaning of the Fourth Amendment. Regarding the body cavity searches, the Court stated (*ibid.*):

> "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification of initiating it and the place in which it is conducted. . . . A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons and other contraband is all too common an occurrence. . . ."

Although observing that body cavity searches invade the personal privacy of inmates to a high degree, the Court, "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates," concluded that such searches could be conducted "on less than probable cause." 441 U. S. 560, 99 S. Ct. at 1885. While otherwise joining the Court's opinion, Mr. Justice Powell dissented as to the body cavity searches, stating that because "of the serious intrusion on one's privacy occasioned by such a search, I think at least some level of cause, such as a reasonable suspicion, should be required." 441 U. S. at 563, 99 S. Ct. at 1886.

In that part of the *Bell v. Wolfish* opinion relating to the Fourth Amendment claims of the pre-trial detainees, the

Supreme Court seemed to be saying that, even assuming the presence of some reasonable expectation of privacy with respect to the subject of a search, resulting in the Fourth Amendment being implicated, if the type of search is justified by institutional security considerations, no "level of cause" for any specific search is required for compliance with the Fourth Amendment. Instead, the "significant and legitimate security interests" of the detention facility may outweigh the privacy interests of the pre-trial detainees, thereby rendering the searches "reasonable" within the meaning of the Fourth Amendment.

Applying these principles to the case before us, it would seem apparent that no Fourth Amendment right of the defendant was violated. Assuming that the defendant had some reasonable expectation of privacy with regard to the envelope because of the absence of notice informing him that the contents would be inspected, under *Bell v. Wolfish, supra,* no "probable cause" or "reasonable suspicion" that the envelope contained contraband, escape plans, etc., need be shown. Rather, the question is whether this type of search is justified by the institution's legitimate concern for security. There can be little doubt that it is so justified. A detention center or correctional institution clearly has a reasonable security interest in knowing what one inmate is communicating or sending to another. *United States v. Dawson, supra,* 516 F. 2d 796. Sealed envelopes from one inmate to another may contain contraband, and letters in such envelopes may embody escape plans or plans for the disruption of the institution. As the United States Court of Appeals for the Seventh Circuit stated in *Smith v. Shimp, supra,* 562 F. 2d at 426: "We may take judicial notice of the fact that an opportunity for secret and lengthy communication between a detainee and his friends . . . would substantially enlarge his opportunity for successful escape. We have no doubt that over the course of time some persons would take advantage of that opportunity." *See also Vida v. Cage,* 385 F. 2d 408, 409 (6th Cir. 1967) ("In our opinion it was not unreasonable for the prison authorities to restrict Vida's communication with other convicts."); *Peterson v. Davis,* 415

F.Supp. 198 (E.D. Va. 1976); *Williams v. Ward,* 404 F.Supp. 170 (S.D. N.Y. 1975).

Although we believe that it would be preferable for jails, detention centers and correctional institutions in this State to inform inmates, by regulation, posted notice or otherwise, concerning inspection of inmate to inmate correspondence, nevertheless whatever privacy expectations the defendant Thomas may have had regarding the sealed envelope were outweighed by the legitimate security needs of the detention center. The absence of a regulation covering the matter does not, in our judgment, make the inspection and reading of correspondence from one inmate to another an unreasonable search under the Fourth Amendment.

*Judgment affirmed.*
*Petitioner to pay costs.*