## SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES *v.* CHARLES ANEGUS ALLEN

[No. 5, September Term, 1979.]

*Decided October 2, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*James J. Doyle, III, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *H. Edgar Lentz, Assistant Attorney General,* on the brief, for appellant.

*Albert J. Matricciani, Jr.,* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The issue in this case is whether an indigent inmate's constitutional right of access to the courts is violated by a prison regulation which limits his postage-free mailings to seven per week.

## (1)

Charles A. Allen, an indigent prisoner at the Maryland Penitentiary, filed a complaint with the Inmate Grievance Commission pursuant to Maryland Code (1957, 1978 Repl. Vol.) Art. 41, § 204F(d), alleging that officials of the institution failed to provide free postage for all his mail, thereby violating his constitutional rights of free speech, freedom of religion, and access to the courts.[1] Specifically, Allen challenged the Division of Correction's Regulation 250-1 (DCR 250-1) which sets forth policies and procedures pertaining to inmate mail. Section IV-A of the regulation permits an inmate to "write sealed letters to a court, Judge,

---

1. The alleged constitutional violations of freedom of speech and freedom of religion are not before us.

clerk of court, attorney-at-law, elected or appointed government official, such as members of Congress or the Maryland General Assembly, Governor, Attorney General, Department of Public Safety and Correctional Services or the Inmate Grievance Commission." The regulation specifies that this mail, unlike other outgoing correspondence, is not subject to inspection by prison officials. Section IV-A requires proper postage to be affixed to outgoing envelopes, "except in the case of an indigent inmate's legal mail." Under Section IV-F, an indigent inmate "will be provided with sufficient first-class postage for seven (7) letters per week."

DCR 250-1 does not restrict the number of letters an inmate may mail at his own expense, nor does it define the term "legal mail." Moreover, it is unclear whether DCR 250-1, § IV-F, as interpreted and administered, provides an indigent inmate with sufficient first-class postage for seven "letters" per week without regard to their individual weight and postage requirements, or whether it limits him to seven fifteen cent stamps per week.

(2)

At an evidentiary hearing before the Inmate Grievance Commission, Allen testified that a number of his letters had been returned during a two-week period from November 28, 1977 to December 13, 1977 for lack of postage. Although the record shows that letters to several attorneys, to a member of the General Assembly, to the Commissioner of Corrections, and to a federal judge were among those returned to Allen, the content of this correspondence is not disclosed. The Inmate Grievance Commission found Allen's complaint "to be meritorious in part." Concluding that an indigent inmate's "legal mail," which it defined as mail to the courts, attorneys and officials enumerated in § IV-A, should not be subject to the limitation of seven letters per week, the Commission held that "the imposition of said limitation on legal mail would effectively limit an indigent inmate's right of access to the courts." The Commission further concluded that an indigent inmate's mail addressed to any party other than those set forth in § IV-A would be subject to "the seven letters per week restriction."

The Secretary of the Department of Public Safety and Correctional Services subsequently reversed the Commission's order. He reasoned "that the allowance of seven stamps per week or 28 or more per month is quite adequate and generous" to insure an indigent inmate's access to the courts, and that legal mail was included within the restriction on free postage.

Pursuant to Code, Art. 41, § 204F, Allen appealed to the Baltimore City Court. That court held DCR 250-1 to be "fair and reasonable, and considerably more generous than such privileges in effect in other states." It noted, however, that an exception to the seven letter per week rule "should be made where the inmate is required to file a responsive answer or pleading within a certain designated time, in any pending case." In modifying the Secretary's order, the court said:

> "Outgoing mail of an inmate, addressed to any party designated in DCR 250-1-IV-A shall be excluded from the seven letters per week postage limit set forth in DCR 250-1-IV-F only when the inmate must file a responsive answer, pleading, motion, or appeal in a pending legal action in any court, within a designated period of time under the provisions of any court Order or rules of any court. Proper postage must be affixed to such mail by the Division of Correction if the inmate is indigent. All other outgoing mail of an inmate, addressed to any party designated in DCR 250-1-IV-A, should be included in the mail privileges allowed such inmate under the provisions of DCR 250-1-IV-F."

Dissatisfied with this ruling, the Secretary sought review in the Court of Special Appeals, contending that DCR 250-1, as interpreted and administered by the Division of Correction, does not deny an indigent inmate any constitutional or statutory right of access to the courts, and that the lower court exceeded its statutorily defined scope of judicial review by modifying a regulation which it had found to be reasonable.[2] The Secretary maintained that the court's

2. Code, Art. 41, § 204F(1) provides for judicial review of the decision of

decision, in effect, required prison officials to open and read an indigent inmate's outgoing mail to determine whether it contained a court pleading eligible for postage-free mailing, and that this imposed an unreasonable burden on the Division of Correction. Allen maintained that the lower court's order simply provides "a safety mechanism to ensure that [he] and his fellow inmates will not be denied access to the courts by missing a critical filing deadline because they cannot afford a postage stamp." We granted certiorari prior to argument in the Court of Special Appeals to consider the important constitutional issue raised in the case.

### (3)

Where, as here, an inmate alleges that a prison regulation impinges upon his exercise of constitutionally guaranteed rights, several established principles are involved in evaluating the prisoner's claim. At the outset, we recognize that a convicted prisoner cannot avail himself of the full panoply of rights and privileges which attend ordinary citizenship. Nonetheless, he is not wholly stripped of constitutional protections by reason of his conviction and incarceration. *See Bell v. Wolfish,* 441 U.S. 520, 99 S. Ct. 1861, 1877, 60 L. Ed. 2d 447 (1979); *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 129, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977); *Bounds v. Smith,* 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); *Thomas v. State,* 285 Md. 458, 404 A.2d 257 (1979). Rather, he retains a variety of constitutional rights "that the courts must be alert to protect." *Meachum v. Fano,* 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976). It has, for example, been held that sentenced prisoners enjoy freedom of speech and religion under the First and Fourteenth Amendments, *see Pell v.*

---

the Secretary of the Department of Public Safety and Correctional Services in inmate grievance cases. In pertinent part, it states:

"Review by the court shall be limited to a review of the record of the proceedings before the [Inmate Grievance] Commission and the Secretary's order, if any, . . . . The court's review shall be limited to a determination of whether there was a violation of any right of the inmate protected by federal or State laws or constitutional requirements."

*Procunier,* 417 U.S. 817, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974); *Cruz v. Beto,* 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972); *Cooper v. Pate,* 378 U.S. 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964); that they are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, *see Lee v. Washington,* 390 U.S. 333, 88 S. Ct. 994, 19 L. Ed. 2d 1212 (1968); and that they may claim the protection of the due process clause to prevent additional deprivation of life, liberty or property without due process of law, *see Meachum v. Fano, supra; Wolff v. McDonnell,* 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

That prison inmates retain certain constitutional rights does not mean that the exercise of these rights are not subject to regulation. The fact and the nature of institutional confinement, as well as the legitimate goals and policies of the penal institution, limit these retained constitutional rights. *See Bell v. Wolfish, supra,* 99 S. Ct. at 1877; *Jones v. North Carolina Prisoners' Labor Union, supra* at 125; *Pell v. Procunier, supra* at 822. Accordingly, there must be "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff v. McDonnell, supra,* 418 U.S. at 556.

It is now well established that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith, supra,* 430 U.S. at 821. *See Ross v. Moffitt,* 417 U.S. 600, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Procunier v. Martinez,* 416 U.S. 396, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974). This right, a corollary of the constitutional guarantees of due process and equal protection,[3] has evolved from two sets of Supreme Court cases, both of which have invalidated unreasonable impediments to court access, and imposed affirmative obligations upon the state to facilitate inmate access to the courts. In one line of cases, the Court has considered the rights of indigent inmates who seek appellate review of their

---

3. One case has also suggested that the right of access is a consequence of the first amendment right to petition the government for redress of grievances, *e.g., Cruz v. Beto,* 405 U.S. 319, 321, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972). *See* Note, *A First Amendment Right of Access to the Courts for Indigents,* 82 Yale L.J. 1055 (1973).

convictions. *See, e.g., Ross v. Moffitt, supra; Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963) (states must provide counsel for an indigent on his first appeal of right from a criminal conviction); *Smith v. Bennett,* 365 U.S. 708, 81 S. Ct. 895, 6 L. Ed. 2d 39 (1961) (indigent prisoners must be allowed to file habeas actions without payment of docket fees); *Burns v. Ohio,* 360 U.S. 252, 79 S. Ct. 1164, 3 L. Ed. 2d 1209 (1959) (indigent prisoners have right to file appeals without payment of docket fees); *Griffin v. Illinois,* 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956) (states that provide criminal appeal procedures must furnish indigents with free transcripts when necessary to effectuate the appeal). In the second set of cases, the Court has addressed the rights of inmates who mount collateral attacks on their convictions and seek redress for violations of their constitutional rights. *See, e.g., Bounds v. Smith, supra,* 430 U.S. at 828 (prison authorities must assist inmates in preparation and filing of legal papers by providing adequate law libraries or assistance from persons with legal training); *Younger v. Gilmore,* 404 U.S. 15, 92 S. Ct. 250, 30 L. Ed. 2d 142 (1971), *aff'g Gilmore v. Lynch,* 319 F. Supp. 105 (N.D. Cal. 1970) (requiring California prison officials either to expand prison law libraries or to adopt another alternative to satisfy prisoners' legal needs); *Johnson v. Avery,* 393 U.S. 483, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969) (state may not bar inmate writ-writing without providing a reasonable alternative); *Ex Parte Hull,* 312 U.S. 546, 61 S. Ct. 640, 85 L. Ed. 1034 (1941) (invalidating a prison regulation which required prior approval of habeas petitions by prison officials). In both instances, the Court has emphasized that the pertinent inquiry is whether adequate, effective and meaningful access to the courts has been provided.

Meaningful access is, however, to be distinguished from unrestricted or unlimited access. The states have been required to "shoulder affirmative obligations" in order that all prisoners might have a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith, supra,* 430 U.S. at 824-25. However, the Court has made it clear that "prison

administrators are not required to adopt every proposal that may be thought to facilitate prisoner access to the courts. The extent to which that right is burdened by a particular regulation or practice must be weighed against the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials." *Procunier v. Martinez, supra,* 416 U.S. at 420.

In *Procunier,* the Court invalidated a California prison regulation which barred law students and paralegals from interviewing inmates. The Court observed that the regulation burdened indigent inmates by restricting their access to legal assistance. Although the regulation was intended to further the legitimate state interest in penal security, the Court said that the prohibition "was not limited to those prospective interviewers who posed some colorable threat to security or to those inmates thought to be especially dangerous. Nor was it shown that a less restrictive regulation would unduly burden the administrative task of screening and monitoring visitors." 416 U.S. at 420. Absent a more persuasive justification for the sweeping prohibition of the regulation, the Court held that it was constitutionally invalid. *Id.* at 422.

Similarly, in *Johnson v. Avery, supra,* the Court struck down a Tennessee prison regulation which prohibited inmates from advising or assisting one another in preparing legal documents. The Court acknowledged that the state had an interest in curtailing jail-house lawyering activities, because these practices might have a detrimental impact on prison discipline and could place substantial burdens on recipient courts. Nevertheless, the effect of the regulation was to deny illiterate or poorly educated inmates any opportunity to vindicate possibly valid constitutional claims, thus compelling the Court to hold that inmate writ-writing must be permitted "unless and until the State provides some reasonable alternative." 393 U.S. at 490. In adherence to the principle that the right of access is not absolute, the Court observed that "[e]ven in the absence of such alternatives, the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the

giving and the seeking of assistance in the preparation of applications for relief . . . ." 393 U.S. at 490.

It is with these principles in mind that we address the effect of DCR 250-1, as interpreted and administered by the Division of Correction, on an indigent inmate's constitutional right of access to the courts.

(4)

As interpreted by the Secretary, DCR 250-1-IV-F's free postage limitation of "sufficient first-class postage for seven (7) letters per week" applies to an indigent inmate's personal and legal mail, including responsive pleadings in pending legal actions. Our examination of relevant case law and regulations from other jurisdictions reveals that the general practice is to restrict free postage for indigent inmates' personal letters, but to provide unlimited postage for communications with courts.[4] *See, e.g.,* 44 Fed. Reg. 35955, 35962 (1979) (to be codified in 28 CFR § 540.20) (All federal inmates receive five first-class stamps per month, but those "without funds or sufficient postage" may send legal mail at government expense.); *Twyman v. Crisp,* 584 F.2d 352 (10th Cir. 1978) (Oklahoma prison regulation provides that an inmate with less than $5 in his prison account receives postage for two legal or personal letters per week. An inmate with no funds in his account is allowed free postage for all legal mail.); *Guajardo v. Estelle,* 580 F.2d 748 (5th Cir. 1978) (Subject to prison's right to recoup expenses, indigent inmates in Texas receive postage for five personal letters per week and unlimited postage for correspondence with courts, government agencies, and attorneys.); *Bach v. Coughlin,* 508 F.2d 303 (7th Cir. 1974) (Illinois prisoners may send three one-ounce personal letters per week at state expense, in

---

4. We are not unmindful of Tate v. Kassulke, 409 F. Supp. 651 (W.D. Ky. 1976) and Craig v. Hocker, 405 F. Supp. 656 (D. Nev. 1975), both holding that an indigent inmate is not denied access to the courts because of the government's refusal to provide free postage for legal mail. However, these cases were decided before Bounds v. Smith, *supra,* and their authority is at best questionable. In his opinion for the Court in the *Bounds* case, Mr. Justice Marshall stated that "indigent inmates must be provided at state expense with paper and pen to draft *legal documents, . . . and with stamps to mail them.*" 430 U.S. at 824-25 (emphasis added).

addition to unlimited postage-free correspondence with federal and state courts, prison officials and the state attorney general.); *Jones v. Wittenberg,* 330 F. Supp. 707 (N.D. Ohio 1971), *aff'd sub nom. Jones v. Metzger,* 456 F.2d 854 (6th Cir. 1972) (Indigent inmates must be provided postage for five letters per week.); *O'Bryan v. County of Saginaw, Mich.,* 446 F. Supp. 436 (E.D. Mich. 1978) (Subject to prison's right to recoup where an inmate's prison account exceeds $2, all inmates with an account balance less than $2 receive unlimited postage for communications with any court or attorney.); *Coleman v. Crisp,* 444 F. Supp. 31 (W.D. Okla. 1977) (While state must mail postage-free any legal documents necessary to secure a judicial determination, there is no such obligation with respect to an indigent's correspondence with a federal judge.). *See also* Standard 6.1(b), American Bar Association Tentative Draft of Standards Relating to Legal Status of Prisoners (1977), allowing indigent inmates free mailing privileges for all letters to courts, public officials, attorneys, and the inmate's immediate family, as well as three additional letters per week.

### (5)

We are unable to ascertain from the record before us the degree to which an indigent inmate's right of access to the courts is burdened by the provisions of DCR 250-1. To determine whether the regulation impermissibly infringes upon the inmate's constitutional right of adequate, effective, and meaningful access to the courts, we must weigh the extent of the impairment of access against the importance of the state interest underlying the regulation. *Procunier v. Martinez, supra; Johnson v. Avery, supra.* DCR 250-1 contains no definition of the term "legal mail," and it is unclear whether the weekly postage limitation in § IV-F has been interpreted and/or administered as a seven-stamp or as a seven-letter rule. The Inmate Grievance Commission's view of the regulation was that an indigent inmate's "legal mail" was excluded from the limitation on free mailings. The Secretary's position was that the regulation afforded seven stamps per week to each indigent inmate without regard to

the nature or recipient of the mailing. The lower court excluded responsive court pleadings from the seven-stamp or seven-letter limitation, and did not decide whether the regulation provided inmates with sufficient first-class postage for seven letters per week without regard to their individual weight and postage requirements, or whether it limited free mailings to seven fifteen cent stamps per week.

Because the record does not disclose the nature or content of the communications which Allen attempted to mail, and because we are not satisfied that sufficient evidentiary light has been shed on the meaning and application of DCR 250-1, we think it appropriate to invoke the provisions of Maryland Rule 871 [5] (thus vacating the judgment of the lower court) and remand the matter for further proceedings before the Inmate Grievance Commission. At the hearing on remand, testimony should be taken on at least the following matters:

(1) the nature or content of the unmailed communications in question;
(2) whether DCR 250-1 § IV-F is administered as a seven-stamp or a seven-letter rule;
(3) the Division of Correction's definition of the term "legal mail";
(4) the standard of indigency used by the Division with respect to DCR 250-1; and
(5) the economic, administrative, or other penal interests served by the regulation.[6]

---

5. The rule provides in part:

"If it shall appear to this Court that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken, or that the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, then this Court, instead of entering a final order affirming, reversing or modifying the judgment from which the appeal was taken, may order the case to be remanded to the appropriate court. Upon remand to the appropriate court, such further proceedings shall be had by amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, as may be necessary for determining the action upon its merits as if no appeal had been taken and the judgment from which the appeal was taken had not been entered . . . ."

6. We note that a regulation which furthers legitimate penal goals may nevertheless be an invalid restriction on access to the courts if it sweeps too

Our disposition of this case does not, of course, inhibit the interim right of the Division of Correction to change or otherwise clarify the provisions of DCR 250-1 conformable with the inmates' constitutional right of access to the courts or to his counsel.

> *Case remanded to the Baltimore City Court without affirmance or reversal, with directions that that court remand the case to the Inmate Grievance Commission for further proceedings consistent with this opinion; costs to abide the result.*

broadly. Procunier v. Martinez, *supra,* 416 U.S. at 413-14. In addition, the Supreme Court has made it clear that, while economic factors may be considered "in choosing the methods used to provide meaningful access," cost alone cannot justify the total denial of this constitutional right. Bounds v. Smith, *supra,* 430 U.S. at 825.