David DAVENPORT, Plaintiff–Appellant,

v.

Brian RODGERS, Defendant–Appellee.

No. 15–1622.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 22, 2015.[*]

Decided Dec. 22, 2015.

Rehearing Denied Feb. 22, 2016.

David L. Davenport, Greencastle, IN, pro se.

Pamela G. Schneeman, Attorney, Office of the Corporation Counsel, Indianapolis, IN, for Defendant–Appellee.

Before DIANE P. WOOD, Chief Judge, JOEL M. FLAUM, Circuit Judge, DANIEL A. MANION, Circuit Judge.

## ORDER

David Davenport has sued Brian Rodgers, a civilian mail clerk at the jail where he was a pretrial detainee, for intercepting and giving to prosecutors letters in which he acknowledges his crimes. The district court ruled that, based on Davenport's allegations and the undisputed facts, Rodgers is entitled to judgment as a matter of law. Because that ruling is correct, we affirm the judgment for Rodgers.

While awaiting trial on drug charges at the Marion County Jail, Davenport mailed two incriminating letters. Working in the mail room, Rodgers's suspicions about the first letter were aroused when it was returned to the jail for insufficient postage. Inmates frequently attempt to thwart bans on communicating with one another by mailing letters with inadequate postage, listing another inmate as the sender, and hoping it will be routed to that inmate when returned to the jail. Following jail policy, Rodgers read the letter to see if it contained an improper inmate-to-inmate communication. It contained a signed confession to the crimes with which Davenport was charged. After reading the confession, Rodgers gave the letter to his

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* Fed. R.App. P. 34(a)(2)(C).

superiors, who instructed him to monitor Davenport's other mail. Within a couple of days, Davenport attempted to mail a second letter. This time he asked his girlfriend to perjure herself at his criminal trial. After reading that letter, Rodgers turned it over to his supervisors, who then gave both letters to the county prosecutor.

Davenport unsuccessfully moved to have the letters excluded from his trial. In affirming his conviction, the Court of Appeals of Indiana explained that he had no reasonable expectation of privacy in outgoing mail while in jail. It emphasized that the facility's inmate handbook provided him actual notice that "[a]ll mail for inmates, both incoming and outgoing, will be opened ... It shall be read, censored or rejected based on content and for security reasons." *Davenport v. State*, No. 49A02–1210–CR–842, 2013 WL 5659477, at *4–6 (Ind.Ct.App. Oct. 17, 2013).

In this suit under 42 U.S.C. § 1983, Davenport seeks damages from Rodgers. He revives his Fourth Amendment arguments and adds two new legal theories. The first is that Rodgers violated Davenport's First Amendment "privacy right" by forwarding his letters to the prosecutor. Second, Rodgers allegedly violated his due process rights by failing to notify him promptly, as required by the inmate handbook, that Rodgers had forwarded the letters. The district court dismissed all but the First Amendment claim and later granted summary judgment on that claim, reasoning that forwarding the letters to the prosecutor served a legitimate penological interest.

Davenport renews all of his legal theories on appeal. We begin with his Fourth Amendment claim and note that Rodgers does not raise issue preclusion, even though Davenport litigated (and lost) this claim in his state-court appeal. See *Starzenski v. City of Elkhart*, 87 F.3d 872, 877 (7th Cir.1996). But Davenport loses on

the merits anyway. The Supreme Court long ago held that the Fourth Amendment does not prohibit the government, in implementing reasonable security measures in prisons, from seizing and using as evidence letters written voluntarily by a prisoner. *Stroud v. United States*, 251 U.S. 15, 21–22, 40 S.Ct. 50, 64 L.Ed. 103 (1919). The principle applies to pretrial detainees as well. See *Smith v. Shimp*, 562 F.2d 423, 425–26 (7th Cir.1977) (holding that state's interest "in monitoring the nonprivileged correspondence of the pretrial detainees" overrides privacy interests); *United States v. Brown*, 878 F.2d 222, 225–26 (8th Cir.1989). Davenport wrote his letters freely and with full knowledge of the jail's procedures for reading correspondence for security reasons; therefore, neither Rodgers's reading the letters nor forwarding them to the prosecution violated the Fourth Amendment.

Davenport's due process claim is equally flawed. He argues that, although the jail's regulations permitted Rodgers to inspect his mail, Rodgers did not notify Davenport before diverting the mail, as those regulations require. But a failure to follow procedures set by local rules or regulations in itself does not violate due process. See *Kvapil v. Chippewa Co.*, 752 F.3d 708, 715 (7th Cir.2014); *Rowe v. DeBruyn*, 17 F.3d 1047, 1051–52 (7th Cir.1994).

Davenport's First Amendment claims were also properly dismissed. Without violating the First Amendment, prison officials may seize and read inmate mail as long as the practice furthers an important governmental interest and is no greater restriction than necessary. See *Koutnik v. Brown*, 456 F.3d 777, 784–85 (7th Cir. 2006); *Smith*, 562 F.2d at 425–26. Davenport does not contest the legitimacy of the jail's practice of reading mail for security reasons; instead he argues that what Rodgers did *after* reading the letters violated his speech rights. But the First

Amendment prohibits the state from restricting the free expression of ideas, *Ashcroft v. Am. Civil Liberties Union,* 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002), and by diverting the mail to prosecutors, Rodgers did not seek to stifle any ideas. Furthermore, "[g]iven that jail officials could legitimately read [Davenport's] mail, we do not think that the First Amendment would bar them from turning letters over to the prosecutor if the jailers happened to find valuable evidence during their monitoring." *Busby v. Dretke,* 359 F.3d 708, 721 (5th Cir.2004). Rodgers merely " 'overheard' a damaging admission during the course of [his] duties," *Busby,* 359 F.3d at 721, and in meeting his legitimate responsibilities to law enforcement, he could forward the admission without becoming liable for suppressing speech.

AFFIRMED.