**STATE of Missouri, Respondent,**

v.

**Robert Lee JOHNSON, Appellant.**

**No. 54829.**

Supreme Court of Missouri,
Division No. 1.

July 13, 1970.

John C. Danforth, Atty. Gen., Peter H. Ruger, Asst. Atty. Gen., Jefferson City, for respondent.

James C. Jones, III, St. Louis, for defendant.

SEILER, Presiding Judge.

Defendant appeals from a judgment of a conviction of first degree murder, with a life sentence.

The state's evidence was that on the evening of May 23, 1968, Sam Travis and his wife were tending their confectionary store at the southwest corner of Webster Avenue and Thomas Street in St. Louis. Witness Willie Nettles testified he was on the corner across the street with some other teenagers. Three other youths, Glenn

Valentine, Michael Quinn, and defendant Robert Johnson, whom Nettles had seen together around the neighborhood, joined the group. The three said they were going in the store to rob Travis and wanted Nettles *to join them, but he did not.* The three entered the store, there was a struggle between Travis and the two, Quinn and Johnson. Several shots were fired and Travis was killed. The three ran out of the store and scattered. Nettles reported what he had seen to the police and defendant was arrested later that evening.

Defendant testified. His defense was that he was at his sister's house where there was a party going on. He knew nothing about the attempted robbery and shooting until someone who had been at the corner came to the house and told them Mr. Travis had been shot and then they all went up to the corner to see what had happened. He was supported in this by his sister and by two of his friends. Glenn Valentine, who had earlier pleaded guilty to the Travis murder, testified for defendant that it was Willie Nettles and Mike Quinn who came out of the confectionary and that defendant was not involved.

Defendant does not contend the state did not make a submissible case. His contention is that the trial court committed prejudicial error and that a new trial is required because of error in refusing a motion to suppress and later admitting into evidence a letter written by defendant when he was in jail awaiting trial, which letter was censored by the guards as outgoing [1] mail and turned over to the police, who informed the circuit attorney about it.

The letter, written in the city jail November 7, 1968, reads as follows:

"Dear Dent

"Say man do you remember me? I'm Pete's (James Johnson) brother. You know the one you used to call Lil Johnson. Say I've heard of your organzation and I wonder if you can help me. I'm down here on a first degree murder rap with Glen Valentine and Michael Quinn. We were the ones charged with the murder of Sam Travis. You know the dude who used to own that store on the corner of Webster and Thomas. Well Michael went to court last month and got life. My lawyer says that if the case doesn't change before I go in Jan. that I'll get the same thing or more. Say dig this, now the people can't identify us and they don't have any evidence. All they've got is the testimony of one dude. That was enough to find Michael guilty. Say dig this, I don't have any outside help at all. My people don't seem to care what happens to me. The dude that's testifying was the fourth dude in on the make. The police saved him to be a witness against us. I didn't tell my lawyer this because I didn't want to admit that I was guilty. All someone has to do is talk to the dude. I'm sure he'd be willing to change his mind about testifying against us. Will you help me. You're my last chance for freedom. Man I really need your help. If you want to help me just answer this letter and I'll tell you all you need to know. Please answer this letter as soon as possible. Robert Johnson."

At the hearing on the motion to suppress, the warden of the municipal jail testified the jail employees censor outgoing and incoming mail for security purposes to avoid escapes or the smuggling in of instruments which would facilitate escapes, and contraband, such as narcotics. The warden did not instruct his employees to inspect or confiscate any mail which may contain an admission of guilt.

At the trial, the guard officer testified that when a person comes in the jail he signs a slip authorizing the jail authorities

[1]. The letter at this stage, unsealed and not yet in the United States mails, was not yet within the protection of Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877, which holds that first class mail cannot be seized and opened without a proper search warrant; see, also United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282.

to censor all mail—incoming and outgoing. The paper signed by defendant, although an exhibit in the case, seems to be lost and thus we do not know exactly what it was defendant signed or how it read. Outgoing letters come to the jail authorities unsealed; they are censored, then sealed and sent out. The grounds for the motion to suppress were that the letter was obtained and used in violation of specific constitutional provisions, state and federal, pertaining to search and seizure and self-incrimination. At the trial when the letter was offered in evidence these objections were repeated and, in addition, objections were made to that portion of the letter reading, "Well Michael went to court last month and got life. My lawyer says that if the case doesn't change before I go in Jan. that I'll get the same thing or more" and "All they've got is the testimony of one dude. That was enough to find Michael guilty", on the ground these portions were so prejudicial to defendant that their introduction would deprive defendant of a fair trial.

■ Addressing ourselves first to the objections to the admission of the letter at all, what we have here is a letter containing an admission of guilt which defendant says should not be used against him and which no doubt was helpful to the state in convicting defendant. His objection that the admission was obtained by an unconstitutional search and seizure is not well taken, because he composed and released the letter knowing it would be read by the jailer prior to mailing. This is the only way he could get a letter mailed, but he was not cut off from using the mail altogether and could have written for help without incrimination. In the final analysis, he himself laid in front of the jailer that which he now seeks to preserve as private. The authorities did not act surreptitiously or lead him to think that what he wrote would be held secret and then violate the understanding. We rule the state did not obtain access to the contents of the letter by search and seizure.

■ As to the claim of violation of his privilege against self-incrimination, this, too, we overrule. Defendant's admissions were discovered in the course of jail security. There is no indication this was merely a guise to get a look at defendant's correspondence. Defendant was under no compulsion or interrogation to admit guilt or make statements inferring guilt. Use by the state of his admissions does not seem unfair or violative of any of defendant's rights, but by permissible jail inspection of an inmate's mail, a not unreasonable invasion of defendant's privacy under the circumstances, State v. Hawkins, 70 Wash.2d 697, 425 P.2d 390; Ex parte Snyder, 62 Cal.App. 697, 217 P. 777; Baker v. State (Fla.) 202 So.2d 563; Ellis v. State, 227 Miss. 440, 86 So.2d 330; State v. Booker, 68 W.Va. 8, 69 S.E. 295; Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103; Hayes v. United States (C.C.A. 10) 367 F.2d 216; Lee v. Tahash (C.C.A. 8) 352 F.2d 970; Adams v. Ellis (C.C.A. 5) 197 F.2d 483; Medlock v. Burke (D.C.E.D. Wis.) 285 F.Supp. 67; In re Bull (D.C.D. Nev.) 123 F.Supp. 389. Looking at the matter from the standpoint of basic fairness, defendant has not been treated unfairly by using his letter against him, because, again, this is all of defendant's own doing and did not arise in a situation where defendant had a right to believe he could proceed in confidence and was then double-crossed.

We point out this case does not involve interception and dissemination of a communication by a client to his lawyer, his pastor, or to the courts and does not authorize violation of the confidentiality of privileged communications to the first two or interference with communications to the last named.

■ Defendant's final point, that the court erred in admitting the portion of the statement about the outcome of the trial against Michael Quinn and the lawyer's appraisal of what would be likely to happen in defendant's case, must be sustained as con-

stituting prejudicial error on the part of the trial court.

Timely objection was made to these parts of the letter but the court erroneously ruled it was admissible in whole, or not at all. The court should have excluded the inadmissible portions, State v. Dunn (Mo.Sup. banc) 309 S.W.2d 643, 645. Certainly the state could not have called a witness to testify to the fact that the case against Michael Quinn was tried the month before and resulted in a conviction with a life sentence, nor could the state have called a witness to testify to what defendant's lawyer's appraisal was of defendant's chances if the situation did not change before defendant had to go to trial. The fact that these statements were contained in a letter admittedly written by defendant does not change this.

As stated in State v. Aubuchon (Mo. Sup.) 381 S.W.2d 807, 815–816, "We have held that it is error to show in evidence or to tell the jury that a jointly accused defendant has been convicted or has pleaded guilty * * *. So, also, have we held that evidence of the acquittal of one jointly accused is improper * * * Were this not the law, the value of a defendant's right to a separate trial * * * might be considerably dissipated. The theory of our statute abolishing the distinction between principals and accessories * * * is that every defendant who joins in the commission of a crime is liable, *on his own*, as a principal; but he is also entitled to be tried on his own without having his guilt prejudged by what has happened to his co-defendant * * * "

Defendant was jointly charged with Quinn and had obtained a separate trial by way of motion for severance. The testimony of Willie Nettles made it clear to the jury that Michael Quinn and Glenn Valentine were also involved in the offense along with defendant and that the three operated together. The statement in the letter as to what happened to Quinn and the opinion of defendant's lawyer that the same thing or worse would happen to defendant was potent material and the jury could well believe that what a previous jury had done to Quinn should also be done to defendant.

See, also, as comparable examples where new trials were required, State v. Stetson (Mo.Sup.) 222 S.W. 425, 427, where reference was made by the state to one young man out of a group of three as having pleaded guilty and, State v. Castino (Mo. Sup.) 264 S.W.2d 372, 375, where defendant, charged jointly with others, had demanded and was granted a separate trial and then at the start of the trial the trial court told the jury panel that the information was originally filed against three defendants, one of whom had already pleaded guilty but had not yet been sentenced by the court.

The judgment is reversed and the cause remanded for a new trial.

HOLMAN, J., and BARDGETT, J., sitting as Special Judge when submitted and as Judge when decided, concur.