STATE of Missouri, Respondent,

v.

**Andrew Leon BERRY, Appellant.**

**No. 43209.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 25, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

---

Claude Hanks, Creve Coeur, for appellant.

Stephen Sharp, Pros. Atty., Kennett, John Ashcroft, Atty. Gen., Jefferson City, for respondent.

CRIST, Presiding Judge.

Appeal from a conviction by jury of murder second degree for which defendant was sentenced to twenty (20) years imprisonment. We reverse and remand.

Defendant's wife (Trecia) testified that on February 12, 1977, she drove defendant and one Ricky Robertson to "Riddle Hill," a place located approximately seven miles west of Malden, essentially for the purpose of "spotlighting" rabbits at night. When Ricky and defendant exited the automobile, defendant shot and killed Ricky.

In September, 1978, Trecia separated from defendant and move to Michigan where she filed for divorce. On May 14, 1980, while still married to defendant, Trecia testified as to the events of the murder over the objection of defendant.

■ The decision in this case is mandated by § 546.260, RSMo. 1978 as interpreted by our Supreme Court in *State v. Euell*, 583 S.W.2d 173 (Mo. 1979). A wife may not testify against her husband in a criminal case over the objection of her husband. *Id.*, at 177.

Defendant also complains of the admission into evidence of a manuscript prepared by him while he was in jail awaiting trial, because the seizure of such manuscript from defendant's jail cell by the sheriff was without defendant's permission and without a warrant. The manuscript detailed events relating to the murder and implicated defendant.

Sam Gilmore was a dispatcher of the Dunklin County Sheriff's Department. Defendant told Gilmore that he was writing a story and showed it to him. Defendant initiated all conversation regarding the document. On two different occasions, Gilmore read the manuscript upon defendant's request. On these occasions, defendant passed the manuscript out of his cell to Gilmore who took complete custody of the document and read it in the dispatch office.

After reading the manuscript, Gilmore reported the facts to the sheriff. Defendant had asked Gilmore not to tell anyone about the manuscript. The second time defendant allowed Gilmore to read the manuscript, Gilmore told the sheriff that defendant had written a lot more about the murder of which defendant was charged.

A day or two later, the sheriff conducted a routine contraband and weapons search—a "shakedown" search throughout

the entire jail. All cells were searched. The manuscript was seized from defendant's cell without defendant's permission. The sheriff gave the manuscript to the prosecuting attorney. It was admitted into evidence at the trial.

We must consider first whether defendant has exhibited a subjective expectation of privacy and second, that the expectation is one that society is prepared to recognize as reasonable. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) Harlan, J., concurring). Here defendant waived any claim that the manuscript was private by sharing it with the dispatcher. What a person knowingly exposes to the public is not a subject of Fourth Amendment protection. *Katz v. United States, supra,* at 511.

In *Johnson v. State,* 456 S.W.2d 1 (Mo. 1970), a prisoner awaiting trial attempted to mail a letter containing damaging admissions, but prison officials intercepted the letter by routine censorship procedures. In holding this did not constitute an illegal search and seizure, the court noted the prisoner was aware of the censorship of mail, hence he had no reasonable expectation that the letter was private: "[H]e himself laid before the jailer that which he seeks to preserve as private." *Id.,* at 3.

Here, a routine "shakedown" search of the entire jail turned up evidence relating to the crime with which the prisoner was charged. These searches took place at irregular intervals of approximately three weeks. Defendant had been in jail several months, long enough to be aware of these searches.

Because defendant shared the manuscript with the dispatcher, and because he wrote potentially damaging statements where "shakedown" searches could find them, he cannot now claim Fourth Amendment protection for his manuscript.

Reversed and remanded.

REINHARD and SNYDER, JJ., concur.