UNITED STATES of America, Appellee,

v.

Raymond Eugene SOSTARICH, Appellant.

No. 82–1321.

United States Court of Appeals, Eighth Circuit.

Submitted July 15, 1982.

Decided Aug. 13, 1982.

Thomas E. Dittmeier, U. S. Atty., Henry J. Fredericks, Asst. U. S. Atty., St. Louis, Mo., for appellee.

David A. Horwitz, Robert H. Kubie, Clayton, Mo., for appellant.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

PER CURIAM.

Raymond Sostarich was convicted on three counts of robbing three federally insured savings and loan associations, in violation of 18 U.S.C. § 2113(a). Sostarich received a 15 year sentence on each count, the sentences to be served consecutively. On appeal he principally contends the trial court erred in refusing to grant a mistrial when the government solicited testimony from a witness that Sostarich had previously spent time in a penitentiary.[1] We find the trial court erred in this regard; we reverse and remand for a new trial.

The government introduced photographs which had been taken by bank cameras during two of the robberies. In these photographs the robber had a moustache but not a beard. At the trial, Sostarich had a full beard. Therefore, some witnesses could not determine if Sostarich was the robber.

The government presented evidence that on July 10, 1981, Northwestern Savings & Loan Association in north St. Louis County was robbed by a white male wearing casual clothes and a cowboy hat. He presented a note to a teller which read: "Freeze, fifteen hundred dollars, I will kill." The teller gave him $2,854, and he walked away. Although the teller did not identify Sostarich as the robber at trial, another employee who had observed him did identify him.

Ten days after the robbery at Northwestern, Community Federal Savings and Loan Association in north St. Louis County was robbed. A white male wearing casual clothes and a cowboy hat presented a note to a teller which read: "Freeze, this is a holdup, I want fifteen hundred dollars in fifties and one hundred dollar bills." The teller handed him that amount, and activated the camera equipment. Thirteen pictures from the film were introduced as evidence. The teller recognized the pictures as depicting the robbery, as did another witness. However, neither identified Sostarich as the robber.

On August 6, 1981, Cass Federal Savings & Loan Association in St. Louis County was robbed by a white male in casual clothes but no hat. He presented a note to the teller that this was a robbery. The teller handed him $340 out of her drawer. She activated the camera, and thirteen pictures from the film were introduced as evidence. At trial, this teller and another teller who had seen the robber identified the pictures as depicting the robbery. However, only the teller who was robbed testified that Sostarich was the robber.

The government called Sostarich's sister, Connie Sue Crow, as a witness. She testified that at the time of the robberies, she was living with her brother in and around Springfield, Missouri. She stated that while she was doing the laundry she found a note in Sostarich's pocket which said: "Freeze, I will kill, $1,500." Sostarich told her that he used such notes in banks and nowhere else. She also testified that Sostarich told her that he was going to St. Louis "to get some money," and that after leav-

---

1. His other contentions on appeal are that the trial court erred in refusing to give an instruction on the credibility of the testimony of a perjurer, and that the trial court plainly erred in failing to give an informer instruction. Because we agree that the court erred in failing to grant a mistrial after the testimony on previous incarceration, we do not reach these issues.

ing and returning, he bought two cars with cash, one for $1,000 and one for $1,800. However, when Ms. Crow was asked to identify the man in the pictures of the bank robberies, she said that she could not be certain that it was her brother, and that it sort of looked like him.

After the testimony of Ms. Crow and the bank employees, the government wished to more firmly establish the identity of the man in the pictures as Sostarich, and therefore called James Russell Dahm, who knew Sostarich. Dahm in fact did identify both the man in the pictures and the defendant as Sostarich. Because the government wished to establish that Dahm knew Sostarich well, the following colloquy occurred:

Q. [by the government] How long have you known Raymond Sostarich?

A. Since '77, '78, when I was in Englewood.

Q. Englewood where?

A. Colorado.

Q. And how much time did you spend with him in Englewood, Colorado?

A. Well, off and on, say a year or two, two years, you know.

Q. How much time did you have at Englewood, Colorado?

A. Five years.

Q. And what was that for?

A. Sawed off shotgun.

Counsel for Sostarich immediately requested a mistrial, asserting that the government had brought out that Sostarich had been incarcerated in Colorado. The court responded there was no showing that Sostarich had been incarcerated, and that he could have been working there. The Assistant United States Attorney stated that he was relying upon the "identity" exception to the general rule that evidence of past crimes may not be admitted. The trial court denied the motion for a mistrial.

We do not agree with the trial court that there was no showing that Sostarich had been previously incarcerated. We think it clear that the jury would conclude from the testimony that Sostarich had served at least one or two years[2] in prison, especially in light of the fact that he was then being tried for three separate crimes. Fed.R. Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule is qualified by Fed.R.Evid. 403, which authorizes the district judge to exclude such evidence, even though relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice."

We find that Dahm's testimony concerning the period of time he was acquainted with the defendant relevant to the question of the identity of the robber. It was incumbent on the government to establish that Dahm knew Sostarich well enough to say whether it was Sostarich who appeared in the pictures.

It is clear, however, the government did not need to bring out the fact of incarceration to prove that Dahm knew Sostarich well at the time they were in Englewood; instead, the government could have asked whether Dahm previously had lived or worked with Sostarich. If the defendant desired to pursue the circumstances of their acquaintance, the government could have notified defendant's counsel of the circumstances, and then whether the incarceration would have been revealed would have been solely a decision of defendant's counsel. Dahm's incarceration testimony had no probative value. It was highly prejudicial.

---

**2.** Sostarich could already have served time when Dahm arrived, or Sostarich could have still been in prison when Dahm left. Dahm's testimony indicates only an overlap of one or two years.

Accordingly, this case is reversed and remanded for a new trial.