**STATE of Missouri, Respondent,**

v.

**Kenneth R. BURNETT, Appellant.**

No. 63374.

Supreme Court of Missouri,
En Banc.

Aug. 31, 1982.

the intent to do serious bodily harm)." The second paragraph can also be modified accordingly.

Peter M. Schloss, Kansas City, for appellant.

John Ashcroft, Atty. Gen., John Jacobs, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Kenneth Burnett appeals from his conviction by a jury of assault in the first degree (§ 565.050.2 [1]), and sentence to life imprisonment (§ 558.011.1(1)). Jurisdiction is in this Court. Mo. Const. art. V, § 3.

On February 24, 1981, at about 8:30 p.m., appellant and a friend, Barry Stidham, went to the Lalla Bonding Company office in Liberty, Missouri, to meet Floyd Foster, a partner in the bonding company, to possibly arrange for the continuation of a bail bond for another friend, one William Payne, who was in jail. The bonding company was across the street from the Clay County jail. Appellant and Stidham drove there in the car of appellant's sister, Sandra Burnett, and parked behind the company building, leaving the car unlocked and the key in the ignition switch.

Appellant and Stidham then went into Foster's office. Foster was there and a

---

1. All statutory references are to RSMo 1978, unless otherwise indicated.

discussion ensued about Foster making bond for Payne. The dispute over the bond involved the demand by Foster that fees due for the previous bond be paid and an increased fee for a new bond because the court had raised the bond to a higher amount.

At this point, the state's version and the defense version of the events are in total contradiction. For the purpose of determining sufficiency of evidence, the court would, of course, consider the evidence in the light favorable to the verdict, however, the issues presented on this appeal require that the two versions be stated.

State's evidence:

Once it became evident that Foster would not post bond for Payne, appellant stood up, opened his coat and pulled out a revolver, threatening to kill Foster. At the same time, Stidham put his sweater over the barrel of the gun to muffle the sound. Foster grabbed the gun, but appellant cocked the gun and pulled the trigger. The primer on the cartridge was indented by the firing pin but the round in the chamber misfired. A fight ensued during which appellant again tried to shoot Foster, who was able to get his little finger between the hammer and the firing pin, thus preventing the gun from firing. Foster suffered a blood blister on his finger as a result. During the course of the fight, three or four primers had been indented in an attempt to fire the gun, but each time the round misfired. Foster was beaten, bitten on the face and had "gobs of hair" pulled out in the struggle. His injuries required hospital treatment.

Just as the fight began, George Lucas, who had an office across the street from the bonding company, was returning from his car when he heard Foster's cries for help. He looked in the window, saw appellant and Stidham striking Foster, and saw the gun pointed in Foster's face. Lucas ran across the street to the Clay County jail and called for help. Three deputies and an off-duty highway patrolman ran to the bond office, broke the door down and subdued appellant and Stidham. Appellant did not stop fighting when ordered to do so by police; he had to be pulled off Foster by police, with whom he continued to struggle. Appellant and Stidham were taken to the jail and searched. Brass knuckles were found in Stidham's coat pocket. The men were carrying approximately $80.00; both men knew it would have taken $710.00 to pay the debt owed on William Payne's previous bonds and to cover the new bond. A briefcase containing a holster and bullets for the gun was later found in the car appellant and Stidham had parked behind the bond office. The gun involved was a single action Ruger .357 magnum revolver.

Appellant's evidence:

Appellant did not testify. Stidham testified in appellant's case and his testimony presented the factual contradiction to the state's evidence, with respect to the fracas.

Stidham testified he and appellant went to Foster's office on the evening in question to talk about the bond for Payne. After arriving at the office, Foster invited the two into a back room where there was, among other things, a motorcycle, and said it was a deposit on another fee and inquired if either of them might be interested in buying it if the fee was not paid. A discussion about the money owed on Payne's bond ensued. Foster drew the gun on appellant. Appellant grabbed for the gun and Stidham grabbed Foster from behind. The fight ensued over the gun during which Foster bit Stidham's finger and Stidham bit Foster in the face. The police came in, the fight ended and Stidham and appellant were taken to the Clay County jail. Brass knuckles were found in Stidham's coat, but he testified he did not know they were there.

On direct examination Stidham testified that he had been previously convicted of a number of felonies stating:

In 1967 I was convicted of forgery and burglary. In 1968 I was convicted on drug charges. In 1974 I was convicted of car theft. In 1977 I was convicted of a drug case and burglary. And I'm presently serving 10 years for assault.

Just prior to Stidham's testimony, defense counsel stated to the court that Stid-

ham was then serving a ten year sentence for assault arising out of this occurrence and moved that Stidham's testimony on this conviction go no further, and that the assault not be identified to the jury as a conviction of assault arising out of this particular occurrence. The motion and objection were overruled.

During cross-examination by the state's attorney, the following occurred:

Q. YOU'RE DOING 10 YEARS FOR THIS SAME ASSAULT; ISN'T THAT CORRECT, MR. STIDHAM?

A. YES, I AM.

Q. YOU GOT CONVICTED UP HERE IN THE CLAY COUNTY CIRCUIT COURT BY A JURY; ISN'T THAT CORRECT?

A. YOU WAS THE PROSECUTOR AT MY JURY TRIAL, SIR.

Q. YOU GOT 10 YEARS; ISN'T THAT CORRECT?

A. YES, IT IS.

Also during cross-examination Stidham was asked if brass knuckles were found in his coat pocket and he said that was correct. Earlier defense counsel raised this matter with the court, asserting by motion in limine, seeking to prevent the inquiry on the basis that there would be no evidence the appellant knew Stidham had the brass knuckles with him. The motion and objections were overruled on the basis that the evidence would show the two were acting together.

At about 1:00 a.m. the next morning, February 25, 1981, the City of Liberty police impounded the car appellant and Stidham used to drive to Foster's office. Subsequently it was claimed by appellant's sister, who owned it. She denied ownership of a briefcase that was found on the front seat of the car. The police opened the briefcase and found a revolver holster and holders containing several .357 magnum revolver shells. Prior to trial, the court held a hearing on appellant's motion to suppress the briefcase, holster and shells as having been obtained by a warrantless search and seizure and without probable cause. In that hearing appellant testified the briefcase was his property and it was latched closed. The trial court sustained the appellant's motion to suppress. The briefcase and its contents were not offered in the State's case.

Toward the end of the recross-examination of Stidham, the prosecutor questioned him and Stidham responded as follows:

BY MR. HENSLEY:

Q. MR. STIDHAM, JUST A COUPLE OF OTHER QUESTIONS. YOU'RE ABSOLUTELY SURE NOW THAT FLOYD FOSTER PULLED THIS GUN?

A. I DON'T KNOW IF THAT'S THE SAME—

Q. YOU GUYS DIDN'T? WELL IT WAS A GUN LIKE THIS?

A. YES.

Q. YOU GUYS DIDN'T HAVE A GUN WITH YOU?

A. THAT'S TRUE.

Q. YOU'RE ABSOLUTELY SURE YOU CAME UP HERE IN THIS PONTIAC AND PARKED BEHIND THE BUILDING, BUT YOU DIDN'T HAVE NO GUN WITH YOU?

A. THAT'S CORRECT.

Q. YOU DIDN'T HAVE NO BULLETS WITH YOU?

A. THAT'S TRUE.

Q. DIDN'T HAVE NO HOLSTER WITH YOU?

At the conclusion of Stidham's testimony the defendant rested and the prosecutor announced he had one rebuttal witness. Anticipating the State was going to offer the suppressed briefcase, holster and bullets into evidence, the defense counsel objected to the admission of the suppressed evidence because it had been suppressed. The prosecutor stated he desired the evidence to be admitted to rebut the testimony of Stidham as set forth above. The court overruled the objection and stated the evidence would be admitted "only for the purposes of the credibility of the witness when he [Stidham]

said that they had no gun and had no holster or bullets." The briefcase was marked as States Exhibit 38 and the holster and bullets as Exhibit 39.

State witness Gant, a City of Liberty police officer, then testified about finding the briefcase in the car and later finding the holster and bullets in the briefcase. He also testified at length that the revolver used in the fracas fit into the holster and that the bullets found in the holster fit the revolver and were of the same manufacture, size and kind as the bullets found in the revolver at the scene of the crime.

The prosecutor argued to the jury that appellant had the revolver and attempted to shoot Foster; that Stidham has "been given 10 years for this very crime"; that Stidham said they didn't bring a gun, holster or bullets and he lied about that to the jury; that the bullets found in the revolver were the same type as found in the holster [Ex. 39]; that the revolver fits into the holster and was made for it; that the jury should look at the briefcase [Ex. 38] and ask why it was in the car if they didn't have the gun instead of Floyd Foster. In rebuttal argument he argued that Exhibit 39 [holster and bullets] just "blows" the theory that Foster got the gun earlier from Payne as security for the bond fee and urged the jury to examine the holster and bullets.[2] He asked, "Why did they bring a gun? Why the briefcase? Why State's exhibit 39? [holster and bullets]. This crime was planned somewhat."

The prosecutor also argued for life imprisonment stating that Stidham got 10 years and he didn't have the gun.

The jury was instructed by Instruction No. 5 on assault in the first degree. Instruction No. 5 referred to the self-defense instruction (Instruction No. 10) and defense of property instruction (Instruction No. 11). Instruction Nos. 10 and 11 were submitted based on the testimony of Stidham for he was the only witness on the facts for the defense. If Stidham was believed by the jury, then the jury could acquit on the basis that Foster had the gun and threatened appellant and appellant was acting in self-defense.

Appellant's first point is the court erred in overruling defendant's objection to the evidence that Barry Stidham had been convicted of assault arising out of this same event for which appellant was being tried.

Appellant contends the admission of this evidence deprived appellant of a fair trial and prejudiced the jury against appellant. The essence of this point is that by showing Stidham had been tried and convicted by a jury of the same offense arising out of the same event, this appellant is deprived of his right to a separate trial on his own, and that such evidence tends to prejudge this appellant by the knowledge of the conviction of his co-actor.

*State v. Aubuchon,* 381 S.W.2d 807 (Mo. 1964), is controlling. The following quote adequately states the relevant facts in that case and the ruling the court reached.

We consider next defendant's point 5. When Anna Mae Gore was on the stand for re-direct examination, the State brought out the fact that her brother Charles Cochran, defendant's co-indictee, was in the penitentiary in Jefferson City. The jury had been advised from the beginning of the case that Cochran and Aubuchon had been charged jointly with this robbery. The clear implication from this evidence was that Cochran had been sentenced for his part in this particular robbery. While the objection to the answer is shown in the record as coming immediately after the answer was completed, we recognize the difficulty at times of getting in a timely objection to a question and answer such as this; after the State's counsel first asked where the witness' brother was, and received the answer "Jefferson City" this followed:

2. Defense witness William Payne testified that prior to February 24, 1981, he left the same revolver used in this crime with Foster as security or payment of the bond fee.

"In the Penitentiary? A. Yes." There is a fair inference that the answer followed too quickly for an objection. The court withheld its ruling on the objection while permitting further questions, but essentially the objection was overruled and the evidence remained. If it be necessary here, which we doubt, we may and do invoke the rule of plain error. Rule 27.-20(c). This point has been fully preserved in the motion for a new trial and since. We are unwilling to rule it upon a technicality. The Assistant Circuit Attorney magnified this error, substantially, by stating in his final argument that "Cochran is in the penitentiary," as were others of his friends, and that defendant was the only one "of the whole bunch still on the street." We mention this argument as merely emphasizing the prejudicial effect of the evidence, since no objection was made to the final argument at the time.

We have held that it is error to show in evidence or to tell the jury that a jointly accused defendant had been convicted or has pleaded guilty. *State v. Mull,* 318 Mo. 647, 300 S.W. 511; *State v. Stetson,* Mo., 222 S.W. 425; *State v. Castino,* Mo., 264 S.W.2d 372; and see 2 Wharton Cr. Evi. (12th Ed.) § 439, p. 215. So, also, have we held that evidence of the acquittal of one jointly accused is improper. *State v. Recke,* 311 Mo. 581, 278 S.W. 995, 1000; *State v. Brown,* 360 Mo. 104, 227 S.W.2d 646, 653. Were this not the law, the value of a defendant's right to a separate trial under § 545.880 and Rule 25.07 might be considerably dissipated. The theory of our statute abolishing the distinction between principals and accessories, § 556.170, is that every defendant who joins in the commission of a crime is liable, *on his own,* as a principal; but he is also entitled to be tried on his own without having his guilt prejudged by what has happened to his codefendant. This statute has obviated the old rule under which it was proper and perhaps necessary to show the conviction of the

principal before an accessory could be convicted. 2 Wharton Cr. Evi., supra. The State seeks to justify the admission of this evidence on the "framework" of other evidence, apparently meaning that defense counsel had shown on cross-examination that another brother had been convicted of robbery, and that the witness herself had been living, unmarried, with one Hayes. It is true that many unsavory factors were developed in connection with persons directly or indirectly involved; that, however, cannot justify the State in putting in additional poison by way of inadmissible evidence. The argument that this evidence was material because it tended to show that Anna Mae Gore could no longer be seeking leniency for her brother, is too thin to outweigh the prejudicial effect of the evidence. We are convinced that the evidence was improper; we have given considerable thought to its prejudicial effect,—in the light of the background of the defendant himself, and also in view of the fact that the evidence fairly showed that a robbery had been committed by one identified as Cochran, while the guilt of defendant depended upon proof of his aiding and abetting; in other words, that their respective convictions would depend on somewhat differing facts and proof. We have been unable to find, however, that the evidence was harmless and we rule it prejudicial. The case will be reversed for this reason.

*Id.* at 815–16.

*Aubuchon* was followed in *State v. Johnson,* 456 S.W.2d 1, 4 (Mo. 1970), and *State v. McCarthy,* 567 S.W.2d 722, 723 (Mo. App. 1978), and a number of other cases which appear in the following quotation from *McCarthy.*

It is well settled that the disposition of the case of another person charged with the same crime is not admissible in the trial of a codefendant. In *State vs. Johnson,* 456 S.W.2d 1 (Mo. 1970), the defendant was convicted of first degree murder

and on appeal claimed error in the admission of evidence (a letter) which informed the jury that a confederate had received a life sentence when he was tried for the crime. The evidence was clear that the confederate was an associate of the defendant in the crime for which the defendant was being tried. The court held that this was prejudicial error, saying:

"As stated in *State vs. Aubuchon* (Mo. Sup.) 381 S.W.2d 807, 815–816, '[w]e have held that it is error to show in evidence or to tell the jury that a jointly accused defendant has been convicted or has pleaded guilty * * *. So, also, have we held that evidence of the acquittal of one jointly accused is improper * * *. Were this not the law, the value of a defendant's right to a separate trial * * * might be considerably dissipated. The theory of our statute abolishing the distinction between principals and accessories * * * is that every defendant who joins in the commission of a crime is liable, *on his own,* as a principal; but he is also entitled to be tried on his own without having his guilt prejudged by what has happened to his co-defendant * * * '." *State v. Johnson,* 456 S.W.2d at 4.

In *State v. Aubuchon, supra,* there was presented evidence (through interrogation of a State's witness) that a co-indictee of defendant was in the penitentiary and the implication was that he had been sent there for his participation in the crime for which defendant was being tried. The introduction of this evidence in *Aubuchon* was held to be error. The evidence had been introduced during the examination of the coindictee's sister. The court also rejected an argument that it was permissible within the "framework" of the evidence, the State arguing that the defense had shown in evidence the conviction of another brother for an apparently unrelated robbery and that the witness had been living with a man to whom she was not married:

"The argument that this evidence was material because it tended to show that

Anna Mae Gore could no longer be seeking leniency for her brother, is too thin to outweigh the prejudicial effect of the evidence." *State v. Aubuchon,* 318 S.W.2d at 816.

Other cases supporting the conclusion that the presentation to the jury of information concerning a confederate's conviction of the crime with which defendant is charged is prejudicial error are: *State v. Castino,* 264 S.W.2d 372 (Mo. 1954), information of confederate's conviction presented in court's address to venireman; *State v. Mull,* 318 Mo. 647, 300 S.W. 511 (1927), information of confederate's conviction presented through a prosecutor's question; *State v. Stetson,* 222 S.W. 425 (Mo. 1920), information of confederate's conviction presented in volunteered statement by a witness; *State v. Fenton,* 499 S.W.2d 813 (Mo. App. 1973), information of confederate's conviction presented in State's opening argument. The basic rationale underlying the holdings that this is prejudicial error is that it is irrelevant and incompetent because it infers that since the confederate was guilty the defendant must therefore be guilty (*State v. Castino, supra*) and violates the defendant's right to be tried on his own. *State v. Johnson, supra; State v. Aubuchon, supra.*

These Missouri cases are in accord with the general rule prevailing throughout the country. *See* Annot., 48 A.L.R.2d 1017 (1956).

*McCarthy,* 567 S.W.2d at 723–24.

■ In the instant case there was prejudice from at least two directions occasioned by the admission of the evidence that Stidham had been found guilty by a Clay County jury of the same offense. The first is as stated in the cases cited *supra.* In effect, if Stidham was guilty, then obviously so is Burnett. The second is that the factual evidence of self-defense here came from Stidham. The jury knew Stidham had been tried and convicted of the same offense. The obvious and logical inference to be

drawn by the jury in appellant's case is that Stidham's jury didn't believe him so why should we believe him.

The State had a right to show the prior felony convictions of Stidham because Stidham testified in this case. That was shown and included the offense of assault for which he was serving ten years. At that point, however, the jury was not informed it was the same assault as in the instant case. The right to impeach credibility by showing prior convictions is satisfied when the conviction is shown, as it was here. There are circumstances when close identification of the event out of which the conviction arose, or the date of the event, may cause no prejudice, but that is not the case here. In the instant case, the objected to evidence was prejudicial.

The State argues it had the right to "fill out" the information regarding Stidham's conviction so the jury could know the complete reason for Stidham's assault conviction. The State also argues the jury knew about Stidham's complicity because he was arrested along with appellant. Neither of these reasons are adequate to justify the inherent prejudice arising from the objected to evidence.

Cases cited by the State have been reviewed. *State v. Gordon,* 499 S.W.2d 512 (Mo. 1973); *State v. Turner,* 272 S.W.2d 266 (Mo. 1954), and *State v. Blevins,* 427 S.W.2d 367 (Mo. 1968), have already been distinguished in *State v. Johnson, supra,* and the others are not persuasive. *State v. Aubuchon, supra,* and *State v. Johnson, supra,* are on point and controlling.

A somewhat analogous situation occurred in *United States v. Sostarich,* 684 F.2d 606 (8th Cir. 1982). There the defendant did not testify but it was important for the government to show that a witness, Dahm, knew the defendant over a period of time so as to firmly establish the identification testimony of Dahm. Dahm was permitted to testify that he had known the defendant since about 1977 or 1978 and further that the

place they were together was in a penitentiary in Colorado. The court reversed saying that, although the testimony of prior acquaintanceship was relevant, "the government did not need to bring out the fact of incarceration to prove Dahm knew Sostarich well at the time they were in Englewood; instead, the government could have asked whether Dahm previously had lived or worked with Sostarich." The evidence of incarceration had no legitimate probative value and was held prejudicial.

Likewise here, the prior conviction had been shown in the direct examination of Stidham. There was no legitimate probative value in further showing a fact, be it date or event, which identified that assault conviction as arising out of the instant assault. There was probative value to it all right—an illegitimate probative value in that it would lead a jury to assume, as previously indicated, that if Stidham was guilty, so was the appellant and to reject Stidham's testimony because, so far as this jury knew, it had been rejected by another.

The court erred in overruling defendant's objection to the evidence showing that Stidham was tried and convicted of the same assault for which appellant was being tried. The error was prejudicial for the reasons stated above, and the judgment must be reversed and remanded.

The rebuttal evidence consisting of the briefcase containing the holster and bullets will probably be offered in evidence on retrial so the court will rule that point.

This evidence had been ordered suppressed by the court and the State agrees in its brief that the suppression ruling was correct. The evidence of the presence of the briefcase, holster and bullets was offered in rebuttal by the State on the premise that it was admissible because witness Stidham testified on direct examination by the State that he, or they, did not have a gun, holster or bullets with them in the car. It appears from the prosecutor's statement to the court that he would offer the evidence of the holster and bullets as

substantive evidence that the defendant had them in the car and not solely for the purpose of impeaching the credibility of Stidham's testimony on cross-examination that he, or they, had no gun, holster or bullets.

The trial court overruled the defense objection and stated the briefcase, holster and bullets would be allowed into evidence "only for the purpose of the credibility of the witness (Stidham) when he said they had no gun and had no holster or bullets."

Nowhere in Stidham's direct examination was he asked about nor did he testify about any briefcase, holster or bullets. The inquiry as to the holster and bullets first came on cross-examination by the State. The appellant argues that the prosecutor's questions and Stidham's answers were directed solely to whether he (Stidham), but not appellant, brought a gun, holster and bullets with him (Stidham). Clearly the question as to the gun included Stidham and appellant. The questions as to the holster and gun appear to be directed to Stidham's possession of them and not directed to appellant's possible possession of them. This judgment is to be reversed and remanded anyway for the error relating to the evidence that Stidham's conviction of assault was for this same assault and on retrial the questions, if proper, to Stidham would easily be phrased so as to include appellant regarding the holster and bullets. Therefore, it would serve no purpose for the issue as to the admissibility of the briefcase, holster and gun to be decided here on phrasing of the questions as they appear in this record. Consequently, we will proceed on the basis that the questions on cross-examination of Stidham included reference to appellant.

Before proceeding on the question of the admissibility of these items in rebuttal, however, it must be stated that the State did use this evidence in final argument to the jury as substantive circumstantial evidence that appellant brought the gun to Foster's office and did not restrict the use of the evidence to impeach Stidham's credibility, which was the sole basis for which the court allowed it in evidence in the first place.

In *State v. Granberry*, 491 S.W.2d 528 (Mo. banc 1973), the conviction was reversed and a new trial ordered because the prosecutor, in argument to the jury, utilized evidence which was admitted solely to impeach the credibility of a witness as substantive evidence—of guilt. The same occurred here and under *State v. Granberry, supra,* that constituted prejudicial error which, in itself, would warrant a reversal of this conviction.

Whether the suppressed evidence was properly admitted to impeach the credibility of the witness Stidham will now be addressed.

In *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), a *defendant* charged with conspiracy to sell a package of cocaine testified on direct examination that he had possessed the packages but did not know what was in them. On cross-examination the defendant denied ever having seen any narcotics and ever having seen a can of cocaine which was exhibited to him and which had been illegally seized from his apartment. The can of cocaine was admitted in evidence on rebuttal. The conviction was affirmed by the court of appeals and then reversed by the United States Supreme Court which held the Fourth Amendment required exclusion of the evidence. The Supreme Court pointed out that Agnello had not been asked, and did not testify, concerning the can of cocaine on direct examination and did nothing to waive *his* constitutional protection or to justify cross-examination in respect of the evidence claimed to have been obtained by the search. The Court, quoting from *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920), said that the exclusionary rule not only commands that illegally seized evidence shall not be used before the Court,

but that it shall not be used at all. *Id.* 269 U.S. at 35, 46 S.Ct. at 7.

In *United States v. Havens,* 446 U.S. 620, 624, 100 S.Ct. 1912, 1915, 64 L.Ed.2d 559 (1980), the Court said the latter statement from *Silverthorne* has been rejected in later cases, and *Agnello* otherwise limited, citing *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). In *Walder,* illegally seized evidence which was inadmissible in the Government's case in chief was admitted to impeach the direct testimony of the *defendant.* The Supreme Court approved saying it would pervert the rule in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), to hold otherwise. *Havens,* 446 U.S. at 624, 100 S.Ct. at 1915.

In *Havens,* the Court went on to say:

> Similarly, in *Harris v. New York,* 401 U.S. 222 [91 S.Ct. 643, 28 L.Ed.2d 1] (1971), and *Oregon v. Hass,* 420 U.S. 714 [95 S.Ct. 1215, 43 L.Ed.2d 570] (1975), statements taken in violation of *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), and unusable by the prosecution as part of its own case, were held admissible to impeach statements made by the *defendant* in the course of his direct testimony. *Harris* also made clear that the permitted impeachment by otherwise inadmissible evidence is not limited to collateral matters. 401 U.S., at 225 [91 S.Ct. at 645]. (Emphasis supplied.)

*Id.* 446 U.S. at 624–25, 100 S.Ct. at 1915.

The Court set forth its rationale:

> We also think that the policies of the exclusionary rule no more bar impeachment here than they did in *Walder, Harris,* and *Hass.* In those cases, the ends of the exclusionary rules were thought adequately implemented by denying the government the use of the challenged evidence to make out its case in chief. The incremental furthering of those ends by forbidding impeachment of the *defendant* who testifies was deemed insuffi-

cient to permit or require that false testimony go unchallenged, with the resulting impairment of the integrity of the fact-finding goals of the criminal trial. We reaffirm this assessment of the competing interests, and hold that a *defendant's statements* made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt. (Emphasis supplied.)

*Id.* at 627–28, 100 S.Ct. at 1917.

The Court in *Havens,* 446 U.S. at 626, 100 S.Ct. at 1916, in commenting on its earlier cases of *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), said:

> In both cases, the Court stressed the importance of arriving at the truth in criminal trials, as well as the defendant's obligation to speak the truth in response to proper questions. We rejected the notion that the defendant's constitutional shield against having illegally seized evidence used against him could be 'perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.' 401 U.S., at 226 [91 S.Ct. at 646]. See also *Oregon v. Hass, supra,* at 722, 723 [95 S.Ct. at 1220, 1221].

In each of the United States Supreme Court cases, including *Havens,* the Court recognized the *defendant's* right not to have illegally seized evidence used against him, but found a waiver of that right when and if the *defendant* testified in his own defense in the manner set forth in those cases. It was the defendant who was not to be allowed to have the benefit of the exclusionary rule so as to permit him to freely commit perjury. This constituted a waiver as to rebuttal evidence directly contradicting *defendant's* testimony.

In the instant case, the defendant did not testify and, therefore, cannot be held to have waived his Fourth Amendment rights with respect to the suppressed evidence so as to permit its introduction as impeachment of his direct testimony. There was no testimony of the defendant to impeach.

As previously indicated, the United States Supreme Court cases allowing suppressed evidence to be used to impeach a witness deal solely with situations in which it was the *defendant* who testified. Even as to him, the evidence is not allowed unless he [defendant] testifies on the specific matter in direct examination or it is a matter that is plainly within the scope of a defendant's direct examination and therefore properly inquired into on cross-examination.

In the instant case, the defendant did not testify and, therefore, *Havens* is inapplicable. Additionally, even if *Havens* were applicable to witnesses other than defendant, it does not justify the admission into evidence of the briefcase, holster and bullets as impeaching evidence in this case. The witness Stidham did not testify at all in direct examination concerning those items and therefore the defense did not, even though another witness (Stidham), seek to have the benefit of the exclusionary rule and at the same time offer evidence clearly contradictory to the fact that the briefcase, holster and bullets were in the car. The State cannot, by simply cross-examining a witness on a matter not testified to in direct, set the stage for the admission of suppressed evidence. *Havens* requires that the subject on cross-examination be a matter that "could be easily understood as a denial" of the particular fact. *Havens,* 446 U.S. at 628, 100 S.Ct. at 1917.

Here the evidence of the briefcase, holster and bullets being present in the car, did not impeach the testimony given by Stidham on direct nor could anything Stidham said on direct be easily understood to have denied their presence in the car.

In the ordinary cross-examination of a witness the court usually allows great latitude. It is not our purpose to closely restrict cross-examination, but when the consequential purpose is to provide a basis for the introduction into evidence of illegally seized material, the court must adhere closely to the controlling cases, of which *Havens* is one, lest the citizen's rights under the Fourth Amendment become only illusory in practice.

■ The court holds that the trial court erred in admitting the suppressed evidence of the briefcase, holster and bullets into evidence on rebuttal in this case.

Appellant also contends it was error for the court to admit the metal knuckles into evidence because there is no evidence that appellant knew Stidham had the knuckles with him and because there was no evidence the knuckles were used in the assault. Additionally, appellant contends the carrying of a concealed weapon (metal knuckles) is a separate crime and evidence of separate crimes are not admissible.

As previously indicated, the metal knuckles were found in Stidham's coat upon arrest immediately following the assault. Stidham admitted the knuckles were in his coat pocket when he and appellant entered Foster's office but denied knowing they were there. He said he just put the coat on before going to Foster's office and didn't realize it contained metal knuckles until the police found them in his pocket. The jury could reasonably find the metal knuckles were brought to the scene by Stidham and they were not bound by his denial of knowledge of their presence in his pocket.

The fact that carrying metal knuckles concealed constitutes the crime of carrying a concealed weapon does not prevent their introduction into evidence if Stidham's possession of them at the time of the fracas reasonably tends to prove a material fact in issue with respect to defendant's guilt of the crime on trial. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304 (Mo. banc 1954).

■ The State's evidence in this case fairly presented a situation in which both

the defendant and Stidham participated together in the assault upon Foster. One of the factors in dispute was whether Foster or defendant and Stidham initiated the fight. The State's theory, which was supported by substantial evidence, is that appellant and Stidham went to Foster's office for the purpose of getting him to make bond for Payne and if bond was not made, to do Foster harm. Metal knuckles have no purpose other than to be used to injure another person. Stidham's possession of them was a fact the jury could reasonably consider in deciding upon the purpose for which appellant and Stidham went to Foster's office. Metal knuckles are certainly the means by which assaults are committed. Under the State's evidence the appellant arrived with a revolver and Stidham with metal knuckles. The possession by Stidham of the metal knuckles was a fact the jury could consider as a relevant circumstance in deciding whether Foster or appellant and Stidham was the aggressor. The court did not err in admitting the metal knuckles into evidence.

Appellant argues the reference to metal knuckles in Instruction No. 9, which included metal knuckles in the definition of "Deadly Weapon", was prejudicial in that the jury might have believed the metal knuckles were the deadly weapon used in the assault and there was no evidence that such was the case.

■ There was no reasonable chance that the jury would have so believed in this case, but the metal knuckles should not have been included as part of the definition of "Deadly Weapon" under the evidence.

Instruction No. 9 is MAI–CR 2d 33.01 and is for the purpose of defining terms used elsewhere in the court's instructions. The "Deadly Weapon" used in the instant assault was a revolver, a firearm, and it was appropriate to define that term by use of MAI–CR 2d 33.01. The notes on use—Note 5—under MAI–CR 2d 33.00 states:

"The definitions must be accurate, but no definition should contain portions not appli-cable to the facts of the particular case. However, the prejudicial effect of the inclusion of unnecessary portions of a statutory definition will be judicially determined."

"Metal knuckles" appears nowhere in the other instructions of the court and should not have been included in Instruction No. 9. The appropriate deletion should be made on retrial.

Because this case must be reversed and remanded for new trial for the reasons set forth above, the Court need not decide the other points on this appeal.

Reversed and remanded.

DONNELLY, C.J., and SEILER, MORGAN and HIGGINS, JJ., concur.

WELLIVER, J., concurs in result.

RENDLEN, J., dissents.

**K.D.R., b/n/f R.J.R., et al., Respondents,**