THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
EUGENE A. MULLINS, Appellant.

Third Department, April 2, 1992

## APPEARANCES OF COUNSEL

*John T. Casey Jr.* for appellant.

*James B. Canfield, District Attorney (Catherine M. Paul* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

Barbara Goetke was last seen leaving a bar with defendant in the early morning hours of April 17, 1982.* Three days later her body was found in a remote area of Rensselaer County. Death was attributed to numerous chopping wounds consistent with blows inflicted by an axe. In the course of their investigation of the murder, police seized an axe (the Mullins axe) in connection with a search of defendant's residence. A second axe (the Axtman axe) was taken during a consensual search of a vehicle owned by Leslie Axtman, an individual who knew Goetke and was present at one of the bars where she and defendant had been seen in the hours preceding her disappearance. Analysis of the Mullins axe showed traces of blood consistent with Goetke's blood type but not defendant's blood type. No analysis was performed on the Axtman axe. Defendant was indicted for murder in the second degree and at the ensuing trial evidence was received concerning both axes. On appeal, this court ruled that the Mullins axe and other evidence obtained as a result of an invalid

---

* Certain of the facts are taken from this court's prior decisions herein (*see,* 137 AD2d 227, *lv denied* 72 NY2d 922; 103 AD2d 994).

search warrant should not have been admitted at trial. The conviction was reversed and the matter remitted for a new trial. A retrial in June 1989 again resulted in a murder conviction and defendant now appeals.

Initially, defendant contends that County Court deprived him of a fair trial by placing impermissible limitations upon his right to present evidence of the Axtman axe. On June 15, 1989, during cross-examination of a prosecution witness, the defense made certain inquiries concerning Axtman. After the witness was excused, the Assistant District Attorney sought an advance ruling from County Court that any inquiry by defendant which had the effect of actually or potentially connecting the Axtman axe with the crime would open the door to the People's production of the Mullins axe, which they described as "the murder weapon". It was the People's position that to permit production of the Axtman axe and not the Mullins axe would unfairly mislead the jury into believing that the murder was committed by Axtman and not defendant and that, by so doing, defendant would be using the suppression of the Mullins axe as a sword and not as a shield. After extensive discussion of the issue, the proceedings were recessed for the day.

When argument continued the following day, the People reversed themselves, now taking the position that the defense was not entitled to an anticipatory ruling and "must proceed at its own risk". Nevertheless, County Court ultimately ruled that defendant could elicit testimony that Axtman knew Goetke, that he was in the bar at the time in question, and that a search of his car disclosed an axe, without opening the door to proof of the Mullins axe. On June 27, 1989, following the close of the People's direct case, defendant was prepared to call State Police Lieutenant Jeffrey Hines, the police officer who interviewed Axtman and seized his axe. First, however, defendant made an offer of the substance of Hines' testimony and sought an advance ruling that he would not thereby open the door to proof of the Mullins axe, in accordance with County Court's prior determination. County Court then indicated that its prior ruling applied only to evidence elicited on cross-examination of prosecution witnesses and did not extend to defendant's direct case. County Court stated: "You are not precluded from [introducing the Axtman axe], but if you do * * * I cannot * * * preclude the Prosecutor from rebutting that evidence by showing * * * that another axe was recovered * * * from property which was under control of the

[d]efendant * * * because that is the only way in my mind in which the equities can be balanced in this case". As a result of this ruling, defendant did not put Hines on the stand or otherwise introduce evidence of the Axtman axe. Defendant now claims that County Court's determination prejudiced him by depriving him of the use of this exculpatory evidence. In response, the People do not deny County Court's error but, rather, argue that defendant's offer of proof was incompetent, immaterial and irrelevant, and thus properly excluded on that basis.

It is fundamental that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court" *(Mapp v Ohio,* 367 US 643, 655). The Supreme Court has carved out an exception to the exclusionary rule, however, which "permits prosecutors to introduce illegally obtained evidence for the limited purpose of impeaching the credibility of the defendant's own testimony" *(James v Illinois,* 493 US 307, 312; *see, United States v Havens,* 446 US 620; *Harris v New York,* 401 US 222, 224-226; *Walder v United States,* 347 US 62, 65-66; *Agnello v United States,* 269 US 20). The court believed that this line of cases "would further the goal of truthseeking by preventing defendants from perverting the exclusionary rule ' "into a license to use perjury by way of a defense" ' " *(James v Illinois, supra,* at 313, quoting *United States v Havens, supra,* at 626, quoting *Harris v New York, supra,* at 226; *see, People v Dash,* 126 AD2d 737; *People v Donnelly,* 103 AD2d 941, 942; 4 LaFave, Search and Seizure § 11.6 [a], at 482-496 [2d ed]). The exception is very limited, however, and will apply only when the illegally obtained evidence (1) is offered in response to the defendant's own testimony *(see, James v Illinois, supra,* at 308-309, 313; *United States v Hinckley,* 672 F2d 115, 133-134; *State v Burnett,* 637 SW2d 680, 688-690 [Mo]) on direct examination or in response "to questions put to him on cross-examination that are plainly within the scope of the defendant's direct examination" *(United States v Havens, supra,* at 627), (2) "squarely contradict[s]" the defendant's testimony *(supra,* at 621), and (3) is offered for impeachment purposes and not as proof of the defendant's guilt *(James v Illinois, supra,* at 313). Not one of these critical factors is present in this case. First, and most important, defendant did not testify. Even if this deficiency could somehow be ignored, it remains that proof of the Mullins axe does not "squarely contradict" the proffered evidence concerning the Axtman axe. Finally, the prosecution

evidence was to be received not for impeachment purposes but as evidence-in-chief.

Nor is this a case where defendant "opened the door" to the admission of the illegally seized evidence by seeking to gain "extraordinary advantage" from the fact of suppression itself (see, 4 LaFave, Search and Seizure § 11.6 [b], at 496-498 [2d ed]). This "exception" encompasses those extreme defense tactics which seek to benefit from an illegal search or favorable evidence obtained therein while at the same time asserting the right to exclusion of inculpatory evidence resulting from the search. A good example is presented in *United States ex rel. Castillo v Fay* (350 F2d 400, *cert denied* 382 US 1019), where the defendant, charged with selling heroin, permitted prosecution testimony that his apartment had been searched and then inquired on cross-examination whether narcotics had been found, knowing that the answer would be in the negative. Because the defendant had opened the door, the prosecutor was then permitted to make inquiry, over the defendant's objection, concerning drug paraphernalia which had been found in the illegal search (*supra*, at 402-403; *see, Commonwealth v Wright,* 234 Pa Super 83, 339 A2d 103). In the present case, defendant has not sought to benefit from the fact of or evidence obtained in the illegal search. In fact, the evidence which he seeks to offer is precisely the same as that offered at the prior trial, at a time when the fruits of the search of defendant's residence had not yet been suppressed. Although defendant has benefitted from the People's inability to establish the existence of the Mullins axe, he has not sought additional benefit from the fact of suppression itself. As extensively argued in County Court, it is one thing to establish the existence of an axe, as defendant sought to do; it is quite another to offer evidence that it was the only axe found. This defendant did not seek to do.

The People's argument that the proffered testimony was incompetent, immaterial and irrelevant was not raised before County Court and has not, accordingly, been preserved for our review (*see,* 1 Newman, New York Appellate Practice § 2.04, at 2-21). Because the People's specific objection to unqualified admission of the evidence was sustained, "on appeal the ruling 'must be sustained upon that ground unless the evidence excluded was in no aspect of the case competent, or could not be made so' " (Richardson, Evidence § 538, at 531 [Prince 10th ed], quoting *Tooley v Bacon,* 70 NY 34, 37). The People's present objection, based primarily upon the argument

that the relevance of the Axtman axe could not be established without resort to hearsay, could have been remedied if timely interposed (see, Richardson, Evidence § 538, at 531 [Prince 10th ed]).

■ In our view, a new trial is mandated. We are by no means unmindful of the fact that defendant has already been twice tried and convicted. County Court's error, however, was not a technical or insignificant one; rather, it extended to defendant's very right to establish a defense (see, People v McClinton, 75 AD2d 900). We also note that County Court and the People, who precipitated the error, were fully aware of its significance and of the risk of reversal. In fact, during the extensive discussion which ensued, County Court addressed the issue correctly at one point, stating: "There is no rule of logic or of law or of evidence that can prevent [defendant] from introducing evidence of exculpatory nature * * * [o]r evidence of other real evidence such as this ax[e] that was found. That is a fact. That was in the first trial. I think [the prosecutor] actually said for the record that any attempt to do that would result in a reversal, were there to be a conviction. I think he has outlined that thoroughly, and I find no fault with that. What the State Police did in reference to this Axtman fellow and what they found on his property or some farm or wherever, has nothing whatsoever to do with what they might have found in any premises occupied by the defendant * * * Axtman was in a bar. There is no proof Axtman ever left any bar with her, or ever dated her. He knew her. Axtman was interviewed a couple of times. They got a search warrant. There was a rusty old ax[e] found in a car in a farmer's field. That, all by itself, doesn't open any doors." Unfortunately, County Court's position later changed.

■ We also find merit to defendant's second assertion of error, concerning County Court's denial of his motion to suppress an April 20, 1982 oral statement upon the ground that the People failed to give timely notice of their intent to offer it at trial (see, CPL 710.30). We agree with defendant that this error alone is sufficient to require a new trial. The record establishes that, although the People had provided defendant with notice of an April 28, 1982 statement, they never gave notice of the earlier statement. Although conceding that the notice had not been given, the People contend that the fact and substance of the April 20, 1982 statement was testified to at a *Huntley* hearing conducted with respect to the April 28, 1982 statement and that, as a result, any notice

deficiency was cured. We disagree. The facts of this case fit squarely within the holding of *People v O'Doherty* (70 NY2d 479) that the People's failure to establish good cause for their noncompliance with the 15-day notice requirement of CPL 710.30 (2) requires suppression of the evidence unless the defendant has made an unsuccessful suppression motion directed at such evidence *(supra,* at 483; *see,* CPL 710.30 [3]; *People v St. Martine,* 160 AD2d 35, *lv denied* 76 NY2d 990; *People v Mole,* 147 AD2d 714). Here, the People never sought leave to serve a late notice upon good cause shown (CPL 710.30 [2]), no suppression motion was directed at the April 20, 1982 statement and no determination was made by County Court with respect to such statement *(see, People v St. Martine, supra,* at 41-42). That being the case, the fact that defendant became aware of the April 20, 1982 statement and of the People's intent to offer it at trial is of no significance *(see, People v O'Doherty, supra,* at 486-487; *People v Mole, supra).*

▮ Contrary to defendant's assertion, the charge regarding circumstantial evidence adequately conveyed to the jury the burden of proof in a circumstantial evidence case *(see, People v Gonzalez,* 54 NY2d 729; *People v Morris,* 36 NY2d 877, 878). We further find that defendant's challenge to the search of his wife's car was untimely *(see,* CPL 255.20 [1]). In any event, the impoundment of the vehicle did not vitiate the consent because defendant's wife consented to a "complete search" of her automobile *(see, People v Jakubowski,* 100 AD2d 112, 116-118) and the degree of privacy invasion was the same whether the automobile was searched in the Mullins' driveway or at the police station *(see,* 3 LaFave, Search and Seizure § 8.1 [c], at 160 [2d ed]).

We have considered and reject defendant's remaining contentions as meritless or academic.

WEISS, P. J., LEVINE and MAHONEY, JJ., concur.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Rensselaer County for a new trial.